STATE, for Use of LAKINS, v. MALLICOAT.—75 S. W. (2d) 1031.

Eastern Section. June 23, 1934.

Petition for Certiorari denied by Supreme Court, October 10, 1934.

George W. Jaynes and Charles S. Stephens, both of Morristown, for appellant.

W. N. Hickey, of Morristown, and D. S. Beeler, of Rutledge, for appellee.

PORTRUM, J.   This suit seeks to open up a guardian's settlement with his ward and disallow all unauthorized and illegal credits. The bill alleges that the defendant, Mallicoat, was appointed the guardian of the complainant by the county court of Grainger county on May 24, 1919; that $1,142 in money came into his hands as such guardian shortly before his qualification; and that the guardian was the stepfather of the ward who was about nine years of age when the money came into the guardian's hands; that the guardian forced the ward to work in the fields as a hand to assist the guardian in his farm work until she was about eighteen years of age when she married and left the home of the guardian; that the guardian failed to furnish her with suitable clothing; and that her work upon the farm compensated the guardian for her board and clothing.

The bill further alleges:

"That the defendant made only two settlements with the court, the first settlement was made on January 6, 1930, about twelve years after he was appointed guardian; in said settlement he was allowed by the clerk $60 per year for nine years for maintenance of your complainant, and $21.50 for maintenance for complainant for four months and nine days, making a total amount of $561.50 for maintenance of your complainant.   The said W. C. Mallicoat did not file a single receipt showing to whom the money was paid and what it was paid out for, thereby obtaining credit for the amount stated above without filing receipts for the same.

"That his second and final settlement was made on December 17,

1931, with the County Court Clerk of Grainger County, Tennessee, in which he falsely and fraudulently demanded and received credit for $50 charged as rent for your complainant living on some land that your complainant and husband had bought from the defendant more than a year before said settlement, and had a warranty deed for the same duly recorded in the Register's office of Grainger County, a copy of which will be offered in evidence at the hearing. The defendant was also given a credit of $35.92 for compensation as guardian, said compensation was not justly due because he had failed to make a settlement as required by law, and through false (fraud) had obtained other credit he was not entitled to, thereby barring any compensation that he might have been entitled to. A certified copy of said settlement will be offered in evidence at the hearing.''

The bill prayed that the complainant be allowed to surcharge and falsify her settlement, and to show said errors, omissions, and fraudulent charges, and to have said settlements reopened generally, to the end that the complainant may show and prove not only said errors, but any others she may thereafter discover.

Certified copies of the two settlements of the guardian were filed as Exhibit A to the original bill.

A demurrer to the bill was filed and overruled by the court, and the appellant assigned as error this action of the chancellor. We overrule this assignment for the demurrer admits the allegations of the bill, which alleges the girl, by her labor, earned her board and clothing, and the credit taken of $561.50, which was not supported by vouchers, necessarily was an illegal charge in view of the admission. And the settlements show upon their face they were ex parte settlements with the clerk, and the clerk did not require the production of vouchers, but received and acted upon the receipt for $1,300 signed by the complainant in full settlement of the guardianship account; in other words, the clerk adopted the settlement of the parties, and made no inquiry as to the items making up the $1,300. Under such circumstances the guardian is not entitled to rely upon the clerk's settlement to defeat an investigation of the items making up the $1,300 receipted for, when the clerk had no knowledge of the items and did not approve them.

The defendant answered the bill, putting in issue the allegations, and much proof was taken. The chancellor entered a decree which reads in part as follows:

''That the said Martha Messer was the daughter of Clark Messer and his wife, Piercy Messer; that the said widow and mother of the complainant, Martha Messer Lakins, married the said W. C. Mallicoat, and that the said Mallicoat as guardian received in his hands at the time of his appointment as guardian, the net sum of $1142

belonging to his said ward, and received this sum on or about May 24, 1919, as the guardian aforesaid. The court further finds that the said Martha Messer Lakins lived with the said W. C. Mallicoat and his said wife, Piercy Mallicoat, mother of the complainant, as one of the family and was regarded and treated by the defendant Mallicoat as one of the family; the said Mallicoat was her step-father and stood to her in loco parentis, and that he never intended to charge her anything for her maintenance, and that there was no contract with anyone to that effect. The court further finds that the said Mallicoat took the funds received by him as the guardian aforesaid and put it in the bank in his own name, checking upon it, using it as his own, but did not make any investment of it in any way, for Martha Messer; that he did not take receipts or vouchers for any expenditures claimed by him for said ward's support; that he did not make any settlement in the County Court of Grainger County during all the years from May 24, 1919, until his first settlement submitted January 6, 1931, and his second and final settlement of December 17, 1931, were the only settlements that he ever made as guardian; . . . and that in the two settlements he made, he filed no proper vouchers or receipts, and that therefore, during the minority of his ward, when she was about seventeen years of age, he conveyed to her a tract of land for $950, and was allowed credit for this amount in his final settlement, and that he did not have and did not apply for approval by the Chancery Court . . . for authority to make this trade, and furthermore, there was no emergency, calling for this action on his part. The court is, therefore, of the opinion and thus adjudged that by reason of all the foregoing facts and the further facts shown in the record, that said defendant, W. C. Mallicoat as such guardian has not done his duty and has not complied with the law and is not entitled to any compensation, and that the several items set out in his report of January 6, 1931, for maintenance of ward for one year and thereafter set out more fully in detail are illegal and improper items and for which he is not entitled to credit and for which he and the sureties on his guardian bond should account to his said ward, with interest.''

Following this finding of facts, then each item of $60 allowed yearly over a period of nine years is taken up, interest calculated upon each for the time it ran, and together with the aggregate sum, a charge of $35.92 allowed in compensation is disallowed and added to the recovery, making the total recovery the sum of $897.22. From this decree, the defendant appealed.

We concur in the finding of facts as set out in the decree. The child was treated as a member of the family, and she was required to work in the field as her half-brothers and half-sisters were,

and her education was greatly neglected. She was permitted to quit school when she had completed the third grade, and, as a consequence, she is illiterate and was not able to protect her interests in settling with her guardian., In view of the attention given and the expenditures made for this child, the defendant was not entitled to charge $60 per year for her maintenance, and the charge was first made twelve years after the institution of the guardianship. The charge has earmarks of being made not to represent the amount actually expended in maintenance of the ward, but to actually cover up the interest charge. He cannot charge for a duty that he owed the child as a member of his family, in the absence of a showing that he was not financially able to perform the duty, and in this case we believe the guardian failed adequately to perform the duty, and as a result the child was not properly maintained.

██ ██ The guardian was not entitled to any compensation. A guardian loses compensation by failure to settle annually and renew bond biennially, especially when he probably made large profits out of the estate. Hume v. Warters, 13 Lea, 559. There is no evidence that the defendant made any profits, but he did borrow the money immediately after it came into his hands and used it for his private purposes. In his best light he was a borrower, and a man who borrows money is not entitled to compensation for a settlement in repayment. In his repayment he is acting in an individual capacity and he is not entitled to charge his ward for this service.

The defendant did not attempt directly to show the items making up the $1,300 receipt; in his answer he pleaded the receipt and mentioned the farm which he sold for $950, a note given for a mule for $50, and another note of $40 for a cow. In his testimony he does not detail the items totaling $1,300, but his counsel in examining the complainant did mention the items which would total this sum, including interest upon these items which were notes given by the complainant during her minority, and represented advances to her. The $950 note, representing the land, had run for over a year, and the interest on this note was calculated and included. Another item of $64.18 was included in this receipt, and represented money expended by the guardian in purchasing furniture and household articles for his ward when she married and set up housekeeping. The defendant's counsel asked plaintiff if this item was not included within the receipt, and by adding it with the other items it makes up the sum of $1,300, and there is no other item to take its place. The guardian was given credit for this item of $64.18 in his settlement with the county court, and it is apparent from the record that it was a double charge.

The clerk allowed the guardian $50 as rent upon the 60-acre farm sold to the ward from the date of the deed to the date of the settle-

ment, being unaware, we think, that the guardian had charged interest on the purchase price for this period. The guardian needed this sum to make his disbursements balance with his cash, and we think it an afterthought and an attempt to escape having to pay the ward $50 in addition. Counsel makes no attempt to defend this charge other than the argument that it was allowed as compensation; the clerk allowed another item as compensation, and this item was designated as rent. But if it be treated as compensation, he is not entitled to recover compensation.

██ The chancellor allowed compound interest on this recovery, excluding one item, and the defendant insists he should be charged with simple interest. Section 8521 of the Code provides:

"In settlements with a guardian, he shall not be chargeable with compound interest, if he can show that he did not and could not have received compound interest on the debts due the estate of his ward."

We think this statute evinces a purpose not to permit the guardian to profit at the expense of his ward, and the burden is on him to show that he does not profit, and when no fraud was intended by a conversion, compound interest is not chargeable. Johnson v. Johnson, 6 Heisk., 240. The defendant thought he had a right to borrow the money and repay it upon his ward's majority, and there was no wrongful intent to convert the money. His relationship to the ward was higher than that of a guardian, and was that of a parent; and a parent accumulates property with the purpose to benefit his family, and the child's benefit should negative the presumption that the parent unlawfully profited at its expense. We think simple interest only should have been required.

██ This holding makes it necessary for us to recalculate the interest, or restate the account. We are trying the case de novo, and in restating the account we will not allow any improper charges, notwithstanding counsel overlooked the double charge, and there is no assignment of error based upon it. We sustain the assignment questioning the amount, but in reducing it, we will limit the reduction to what we think is the double amount. In making the calculations we go through the two settlements and strike out the items disallowed, as improper credits, and ignore them. The double charge of $64.18 is stricken out of the settlement and allowed to remain in the $1,300 receipt. Our first calculation is January 6, 1931, the date of the first settlement. The second is December 17, 1931, the date of the final settlement; and the next and last ends at the date of the decree, May 25, 1933. We find the balance due on this date the sum of $741.24, and recovery will be had for this sum with interest from the date of the decree aforesaid. We should have stated the calculation began May 24, 1919, with the sum of $1,142.

This was a broad appeal, tried de novo in this court, and it was not necessary for the appellee to file a writ of error to assign error here; for this reason we make a division of the costs. The cost of the appeal will be paid by the parties in equal portions.

Snodgrass and Thompson, JJ., concur.

## On Petition to Rehear.

Both parties have filed petitions to rehear.

The attorney for the guardian is sure he could show, if he had the opportunity, that the $64 item was not charged twice. The record indirectly shows that it was, but no attempt was made to show what items composed the $1,300 receipt. However, counsel representing the complainant must have been familiar with the items making up the receipt, and since his attention was called to it by the opinion and since counsel makes no attempt to demonstrate by figures the correctness of the court's conclusion, we are ready to concede that perhaps we erred as a matter of fact, and defendants' counsel mistakenly referred to the $64 items as a part of the sum represented by the receipt. We are content to recede from our former position and not raise this question upon our own motion. The decree will be modified by reducing the amount by the sum of $64.18.

The appellee bases her petition to rehear upon two grounds:

1. The court erred in taxing her with one-half of the appeal cost since it was necessary for her to prosecute a writ of error to obtain relief. (We hold otherwise. A broad appeal in equity brings up the record for a trial de novo and either party may assign error. Central National Bank v. Willis, 8 Tenn. App., 204; Pigg v. Houston, 8 Tenn. App., 613.)

2. And that the chancellor did not allow compound interest in his settlement. It is true the clerk did not strictly compute compound interest, but his calculation was near akin to compound interest for he created a new and additional principal each year for a period of eight or more years, making in all some ten principal sums which bore interest. The total interest charged, therefore, was in excess of simple interest, and for this reason we confined the recovery to simple interest.

The appellees' petition is overruled.