# IN THE COURT OF APPEALS OF TENNESSEE
## MIDDLE SECTION AT NASHVILLE

IN RE:                )
ERNEST L. WHITE,     )
Conservatorship       )
                      )
TYRONE HOWELL,     )
Administrator,        )
                      )
      Plaintiff/Appellant,   )
                      )     Davidson Probate
VS.                   )     No. 99164
                      )
                      )     Appeal No.
LORETTA DeLOACH,   )     01A01-9704-PB-00154
Substitute Conservator,  )
                      )
      Defendant/Appellee.   )

APPEAL FROM THE PROBATE COURT FOR DAVIDSON COUNTY
THE HONORABLE FRANK G. CLEMENT, JR., JUDGE

For the Plaintiff/Appellant:

William S. Hofstetter
Nashville, Tennessee

James C. Hofstetter
Nashville, Tennessee

For the Defendant/Appellee:

Thomas H. Ware
Nashville, Tennessee

# VACATED AND REMANDED

WILLIAM C. KOCH, JR., JUDGE

# O P I N I O N

This appeal involves the adequacy of a conservator's accounting of a disabled person's estate. After the conservator filed her final accounting in the Probate Court of Davidson County, the personal representative of the disabled person's estate objected to the accuracy and completeness of the accounting. The probate court conducted a bench trial and approved the conservator's amended final accounting. On this appeal, the personal representative asserts that the final accounting was irregular and that the conservator has failed to account for all of the disabled person's funds. We have determined that the conservator's final accounting cannot be reconciled and, therefore, that the order approving the final accounting must be vacated.

## I.

In May 1992, Nashville's public guardian[1] requested the Probate Court of Davidson County to appoint a conservator for Ernest White. Mr. White, an 80-year-old World War II veteran, was residing in a nursing home at the time and was unable to manage his own affairs due to age and physical and mental incapacity. The probate court appointed a guardian ad litem to investigate Mr. White's circumstances. Upon discovering that Mr. White owned real property and had several sources of retirement income, the guardian ad litem recommended the appointment of a conservator for Mr. White because no one was looking out for his property. In July 1992, the probate court appointed the public guardian as Mr. White's conservator.

Mr. White's wife later died and his adopted daughter was committed to a psychiatric institution. Approximately one year after the public guardian became Mr. White's conservator, Loretta DeLoach, Mr. White's niece who lived in Michigan, asked the probate court to appoint her substitute conservator. Ms. DeLoach intended to move Mr. White to a nursing home in Michigan where she and Mr. White's nieces

---

[1]The Public Guardianship for the Elderly Law, Tenn. Code Ann. §§ 34-7-101 through -105 (1996), created a statewide program of district public guardians for the purpose of protecting the disabled elderly who have no willing and responsible family members or friends to care for them.

and nephews could monitor his care. Even though a guardian ad litem opposed placing Mr. White in Ms. DeLoach's care, the probate court appointed Ms. DeLoach as Mr. White's substitute conservator in October 1993. Ms. DeLoach quickly moved Mr. White to a nursing home in Detroit.

Mr. White died on July 22, 1994, leaving his mentally incapacitated daughter as his next of kin and sole heir at law. Even though Mr. White apparently left a will,[2] no one qualified as personal representative for his estate, either because the will did not name a personal representative or because the person named in the will was unable to serve. Accordingly, Tyrone Howell, Mr. White's daughter's co-conservator, was made the personal representative *cum testamento annexo* of Mr. White's estate.

Ms. DeLoach was not prompt about filing a final accounting and settlement of the conservatorship property. On June 5, 1995, Mr. Howell requested the probate court to require her to file a final accounting and settlement. After Ms. DeLoach filed a final accounting on July 21, 1995, Mr. Howell objected to the accounting on the ground that it was incomplete and incorrect. On April 24, 1996, the probate court directed Ms. DeLoach to file a full and complete final accounting. Ms. DeLoach filed an amended final accounting on May 15, 1996, and the probate court conducted a hearing concerning Mr. Howell's objections on June 5, 1996. On January 31, 1997, the probate court entered an order approving the final accounting.

## II.
### THE PROBATE COURT'S SUBJECT MATTER JURISDICTION

We turn first to Mr. Howell's assertion that the probate court lacked jurisdiction to approve the final accounting. While Ms. DeLoach insists that we should not consider this issue because Mr. Howell did not raise it in the probate court, issues concerning subject matter jurisdiction are of such importance that we will consider them even when raised for the first time on appeal. *See* Tenn. R. App. P. 13(b); *Manning v. Feidelson,* 175 Tenn. 576, 578, 136 S.W.2d 510, 510-11 (1940);

---

[2]Mr. White's will is not part of this record.

*Morrow v. Bobbitt,* 943 S.W.2d 384, 392 (Tenn. Ct. App. 1996); *Gillespie v. State,* 619 S.W.2d 128, 129 (Tenn. Ct. App. 1981).

The concept of subject matter jurisdiction concerns a particular court's authority to hear a particular type of case. *See Meighan v. U.S. Sprint Comm. Co.,* 924 S.W.2d 632, 639 (Tenn. 1996); *Turpin v. Conner Bros. Excavating Co.*, 761 S.W.2d 296, 297 (Tenn. 1988); *Standard Sur. & Cas. Co. v. Sloan*, 180 Tenn. 220, 230, 173 S.W.2d 436, 440 (1943). It can be conferred only by the Constitution of Tennessee or by legislative act, *see Kane v. Kane*, 547 S.W.2d 559, 560 (Tenn. 1977); *Brown v. Brown*, 198 Tenn. 600, 618-19, 281 S.W.2d 492, 501 (1955), and not by the conduct of the parties. *See Shelby County v. City of Memphis,* 211 Tenn. 410, 413, 365 S.W.2d 291, 292 (1963); *Seagram Distillers Co. v. Jones,* 548 S.W.2d 667, 671 (Tenn. Ct. App. 1976). Whether a court has subject matter jurisdiction depends on the nature of the cause of action and the relief sought. *Landers v. Jones*, 872 S.W.2d 674, 675 (Tenn. 1994).

The Probate Court of Davidson County was created in 1963 when the city and county governments of Nashville and Davidson County were consolidated into the present metropolitan government. *See* Act of Mar. 13, 1963, ch. 124, 1963 Tenn. Priv. Acts 394; Frederick S. LeClercq, *The Tennessee Court System,* 8 Mem. St. U. L. Rev. 185, 465-68 (1978). The court's enabling legislation vested it with "[o]riginal jurisdiction and powers with respect to . . . the administration of estates, guardianships and conservatorships" and "over the person and estates of idiots, lunatics, mentally ill persons and persons of unsound mind." Act of Mar. 13, 1963, ch. 124, § 2(1), 1963 Tenn. Priv. Acts 394, 395. It also received jurisdiction over all matters conferred on probate and county courts by state law. *See* Act of Mar. 13, 1963, ch. 124, § 2(1), 1963 Tenn. Priv. Acts 394, 396. These provisions leave little room for serious doubt about the Probate Court of Davidson County's subject matter jurisdiction over conservatorship proceedings or its power to review and approve final accountings.

Mr. Howell's jurisdictional argument, as we understand it, is that the probate court lacked subject matter jurisdiction to approve Ms. DeLoach's final accounting because it had not been examined and approved by the probate court clerk. While the

statutes contemplate that the clerk will report on accountings,[3] they do not elevate the clerk's role to anything more than a ministerial activity much like a master considering a matter on reference. *See* Tenn. R. Civ. P. 53.03(3); *Mynatt v. Isom,* App. No. 03A01-9702-CH-00056, 1997 WL 528813, at *1 (Tenn. Ct. App. Aug. 27, 1997) (No Tenn. R. App. P. 11 application filed). Notwithstanding the clerk's contemplated role, the ultimate responsibility for adjudging the rights and responsibilities of those interested in an accounting rests with the court. *See Evans v. Evans,* 42 Tenn. (2 Cold.) 143, 152 (1865); *Cobb v. Jameson,* 1 Tenn. Ch. App. 604, 607 (Tenn. Ch. App. 1874). Thus, a court's decision to consider an accounting without first referring it to the clerk does not require reversal when the record shows that the court considered the accounting on its merits.[4]

Mr. Howell relies heavily on *In re Cothran,* 57 Tenn. (10 Heisk.) 119 (1872) to support his jurisdictional argument. That case involved a proceeding in which the administrator of a decedent's estate attempted to escape liability for the loss of estate funds caused by a bank failure. In addition to filing his petition prematurely without giving the required notice, the executor filed the petition directly with the court without first obtaining a statement of account from the county court clerk. The Tennessee Supreme Court found that "the entire proceedings is irregular, if not void absolutely." *In re Cothran*, 57 Tenn. at 122. The court also determined that the question of whether the executor should be relieved of liability for the loss caused by the bank failure was one of "delicacy and great importance" that should be addressed by the chancery court rather than by the clerk of the county court. *In re Cothran,* 57 Tenn. at 123-24. Accordingly, the court determined that the entire proceedings were "*coram non judice*" (not before the court). *In re Cothran,* 57 Tenn. at 124.

[3]*See* Tenn. Code Ann. §§ 18-6-106(8) through -106(14) (1994), 18-6-107 (1994), 18-6-110 (1994), 34-11-131 (1996), and 34-13-108(e) (1996).

[4]Since we have determined that the probate court could consider Ms. DeLoach's accounting without having it reviewed by the clerk, we need not determine whether the clerk actually reviewed and reported on the accounting in this case. The record does not permit us to determine what the probate court clerk did in this case. Ms. DeLoach asserts that she produced bank and brokerage records for the clerk's inspection and that the check marks and the deputy clerk's signature and date stamp on the accounting is proof that the clerk reviewed the final accounting before the probate court approved it. The record, however, contains no evidence concerning the significance of the check marks or signature. There is no affidavit from the clerk or other formal certificate that the accounting has been reviewed and approved. *See* 3 Jack Robinson & Jeff Mobley, *Pritchard on the Law of Wills and Administration of Estates* § 1156 (5th ed. 1994); 2 Jack Robinson et al., *Tennessee Forms* No. 4-1312 (1991) for standard forms used when a probate court clerk reviews and approves a final accounting.

The *In re Cothran* decision stands for the proposition that a settlement proceeding in county or circuit court cannot provide a vehicle for determining whether an administrator has performed his or her duties in good faith. We do not read the *In re Cothran* decision as holding that a probate court's jurisdiction over the final accounting of a conservatorship somehow depends on the involvement or lack of involvement of the court's own clerk. The courts are ultimately responsible for the disabled persons who come under their care and protection. *See Hinds v. Buck,* 177 Tenn. 444, 448, 150 S.W.2d 1071, 1072 (1941); *In re Ellis,* 822 S.W.2d 602, 607 (Tenn. Ct. App. 1991). As the Tennessee Supreme Court noted in another context, "[i]f . . . the trial Judge sees proper to take upon himself the extra labor of stating the account and obtaining the necessary data therefor, it is not a matter for which this Court would reverse, if the merits of the case have been reached." *Gray v. State,* 95 Tenn. 317, 319, 32 S.W. 201, 202 (1895).

# III.

## RECONCILIATION OF THE AMENDED FINAL ACCOUNTING

Mr. Howell asserts that the approval of Ms. DeLoach's final accounting deviated from the applicable procedural statutes in several material respects. Ms. DeLoach responds that many of the specific issues Mr. Howell raises on appeal were not raised in the probate court. Mr. Howell filed four pleadings containing objections to Ms. DeLoach's accounting during the eighteen months following Mr. White's death. Whatever else he may have meant when he asserted that Ms. DeLoach's accountings were "incomplete and erroneous," Mr. Howell specifically asserted that Ms. DeLoach had failed to identify the sources of Mr. White's income and that she had understated Mr. White's estate by showing investments as disbursements.

Appellate courts generally recognize that trial courts should not be placed in error for matters not brought to their attention. *See* Tenn. R. App. P. 36(a); *Simpson v. Frontier Community Credit Union,* 810 S.W.2d 147, 153 (Tenn. 1991); *State Dep't of Human Servs. v. Defriese,* 937 S.W.2d 954, 960 (Tenn. Ct. App. 1996). However, the specificity requirements in this principle do not apply with equal force to appeals

from decisions approving final accountings of estates of deceased or disabled persons. The appellate courts review these accountings de novo and may question facially worrisome aspects of an accounting. *See State ex rel. Lakins v. Mallicoat,* 18 Tenn. App. 285, 290, 75 S.W.2d 1031, 1034 (1934).

We turn first to the assets and income that came into Ms. DeLoach's hands during the conservatorship. In November 1993, Ms. DeLoach's predecessor turned over $48,190.69 in assets.[5] During the conservatorship, Ms. DeLoach reported receiving an additional $25,284.39, presumably representing Mr. White's monthly income.[6] Thus, the total amount of funds that came into Ms. DeLoach's hands during the conservatorship was $73,475.08. These figures, except for the reporting shortcomings, are relatively straightforward.

Ms. DeLoach's disbursements are another matter. Her amended final accounting shows disbursements totaling $48,674.50, including two $10,000 payments for equity investments of some sort.[7] These two disbursements differ materially from the other listed disbursements. They do not represent payments of expenses incurred on behalf of Mr. White. Rather, they represent a change in the form of an asset (from cash to an equity investment). Unlike the disbursements to pay expenses which reduced the total funds in Mr. White's estate, the disbursements to Smith Barney and Oppenheimer should have had no net effect on the total funds in the estate. What had previously been $20,000 in cash presumably became $20,000 in equity investments.

---

[5]These assets consisted of $18,190.69 in cash and a $30,000 certificate of deposit.

[6]We do not know the sources of these receipts because Ms. DeLoach failed to provide them. The record indicates that Mr. White was receiving approximately $3,218 per month in social security benefits ($533), veteran's benefits ($1,833), company retirement ($477), and rental income ($375). Assuming that Mr. White received this income during the last eight months of his life, Ms. DeLoach would have received $25,744. The amount of income reported by Ms. DeLoach corresponds approximately with this amount.

[7]The accounting lists two $10,000 payments to Smith Barney and Oppenheimer Family of Funds. While the details of these purchases is not well developed in the record, we presume that the $20,000 used to purchase these investments came from the April 1994 maturation of Mr. White's $30,000 certificate of deposit. We also know that Ms. DeLoach made these investments without first seeking court approval as required by Tenn. Code Ann. § 34-11-115(c) (1996).

Adjusting Ms. DeLoach's amended final accounting to reflect the proper treatment of the Smith Barney and Oppenheimer investments, her ending balance should have been approximately $44,800 rather than $24,800. Accordingly the final accounting should have looked something like this:

| | |
|---|---|
| Beginning Cash | $ 18,190.69 |
| Cash from matured CD | 10,000.00 |
| Smith Barney & Oppenheimer | 20,000.00[8] |
| Receipts | 25,284.39 |
| Total funds of conservatorship | $ 73,475.08 |
| Disbursements for real expenses | (28,674.50) |
| Ending Balance | $ 44,800.58 |

Based on the figures submitted by Ms. DeLoach, the ending balance in the conservatorship should have consisted of the liquidated value of the Smith Barney and Oppenheimer investments plus over $20,000 in cash.

Rather than supporting Ms. DeLoach's accounting, the beginning inventory of Mr. White's estate filed in the Wayne County, Michigan Probate Court corroborates the conclusion that Ms. DeLoach has not properly accounted for the cash assets in Mr. White's estate. According to that inventory, Ms. DeLoach turned over $24,833.48 as the total balance of conservatorship funds representing the proceeds of the Oppenheimer investment ($9,665.12), the proceeds of the Smith Barney investment ($8,849.70),[9] and two cashier's checks (one for $4,816.01 and another for $1,502.65).[10] While the amounts corresponding to the investments appear to be

---

[8]The figures for the Smith Barney and Oppenheimer investments should be adjusted for capital gains, broker commissions, and other attendant investment expenses. Since Mr. White's death required a premature liquidation of these investments, the decline in their new value after liquidation is not necessarily the result of imprudent or careless investment strategy on Ms. DeLoach's part.

[9]The inventory filed in the Wayne County Probate Court states that the value of the estate's interest in the Smith Barney account was $9,512.71. Ms. DeLoach represented she received $8,849.70 from this investment. The record sheds no light on how to reconcile this difference.

[10]The record does not reveal the source of the funds used to purchase these two cashier's checks or why Ms. DeLoach turned over two cashier's checks instead of one. One possible inference is that Ms. DeLoach commingled the conservatorship funds with other funds. These questions can

-8-

within the range of reason, the amount turned over as cash does not. Using Ms. DeLoach's own accounting figures, we have determined that the cash in the conservatorship estate should have looked something like this:

| | |
|---|---|
| Beginning cash | $ 18,190.69 |
| Receipts | 25,284.39 |
| Cash from matured CD | 10,000.00 |
| Total conservatorship cash | $ 53,475.08 |
| Disbursements for real expenses | (28,674.50) |
| Ending cash on hand | $ 24,800.58 |

Ms. DeLoach turned over only $6,318.66 over and above the proceeds from the Smith Barney and Oppenheimer investments. The record provides us with no means to reconcile the difference of over $18,000 between this amount and the amount of cash that should have been on hand when the conservatorship was closed.

At least two other matters relating to this accounting require additional explanation. The first relates to a $3,411.55 fee to Ms. DeLoach's counsel approved by the probate court on December 9, 1993. The second involves a $4,983.67 reimbursement to Ms. DeLoach for the expenses of moving Mr. White to Detroit that was approved by the probate court at the same time it approved the legal fee. The final accounting lists no disbursements for these expenses, yet it would be highly unusual if these court-approved expenditures were not made. If these expenses were paid from conservatorship funds but just not reported, including them in Ms. DeLoach's final accounting renders her figures completely irreconcilable.

When a party having an interest in a disabled person's estate challenges a conservator's final accounting, the burden is on the conservator to establish the correctness of the accounting. *See Conservatorship of Sheard v. Franks*, 652 P.2d 849, 851 (Or. Ct. App. 1982); *In re Rasco,* 552 S.W.2d 557, 560 (Tex. Civ. App. 1977); *Salisbury v. Hanover Ins. Co.,* 443 P.2d 135, 137 (Wyo. 1968). Consistent with the court's duty under Tenn. Code Ann. § 34-13-107(4) (1996) "to properly care

_____

and should be resolved on remand.

-9-

for the . . . property of the disabled person," the court having jurisdiction over a conservatorship should approve a conservator's final accounting only when it fully and accurately accounts for the disabled person's estate. The record concerning Ms. DeLoach's accounting for her use of Mr. White's funds leaves open too many questions for her accounting to be approved. Accordingly, we vacate the order affirming the amended final accounting and remand the case to the probate court for consideration in strict compliance with the applicable statutes.

## IV.

We vacate the probate court's January 31, 1997 order approving Ms. DeLoach's amended final settlement and remand the case for further proceedings consistent with this opinion. In light of our disposition of the case, we need not address Mr. Howell's other issues because he will be able to present them to the probate court on remand. The costs of this appeal are taxed to Loretta DeLoach personally. They are not to be paid from the funds in Mr. White's estate. Ms. DeLoach may request the probate court to awarded her reimbursement from the estate for these costs, and the probate court may grant reimbursement if it determines that the Ms. DeLoach is not responsible for the shortcomings in her amended final accounting and if the court determines that Ms. DeLoach has fully and appropriately accounted for all of Mr. White's funds that came into her possession while she was serving as his conservator.

_____
WILLIAM C. KOCH, JR., JUDGE


CONCUR:


_____
HENRY F. TODD, P.J., M.S.


_____

-10-

WILLIAM H. INMAN, SPECIAL JUDGE