THOMAS, Justice.
This case reached this court because of an apparent conflict between the decision rendered in this cause by the District Court of Appeal, First District, and one rendered in a similar matter by the District Court of Appeal, Second District, In re De Hart, 114 So.2d 13. We set the case for hearing on jurisdiction and merits and concluded that actual, as distinguished from apparent, inconsistency existed so under our decisions assumed jurisdiction to determine the merits also.
Before adverting to the jurisdictional feature we will give a background of the litigation. Florence M. Mickler was an 81-year old widow who was living at Brooksville in Hernando County where she had made her home for more than half a century. For more than 35 years she and Eula L. Hendricks, who lives in Perry, Taylor County, had been close personal friends visiting each other frequently and occasionally taking automobile trips together. Finally the ravages of time reduced Mrs. Mickler to incompetency and in July 1961 she implored Mrs. Hendricks over the telephone to come for her because there was a movement on foot to send her to the “crazy house.”
Mrs. Plendricks went immediately to Brooksville where she found Mrs. Mickler in what might be accurately described as a sorry state. She seemed to need de-alcoholization. Her home was in disorder and was littered with whiskey bottles. Her person was in disarray; even her hair required grooming. Mrs. Hendricks evidently undertook to condition Mrs. Mickler then, a few days after, took Mrs. Mickler home with her. Later Mrs. Mickler, haunted by the fear of being sent to an asylum, decided she wished to remain with her old friend. The result was that Mrs. Hendricks secured an order of the County Judge of Taylor County adjudging Mrs. Mick-ler incompetent and appointing Mrs. Hendricks her guardian.
Afterward, in a proceeding we will presently describe, two distant cousins of Mrs. Mickler, Ursula D’Ferro and Rudy J. In-man, petitioned the court to revoke the guardianship proceedings. Their petition was denied. The controversy was then taken to the District Court of Appeal.
The court observed in its opinion that the pivotal question as the parties developed it, was whether venue should be laid in Hernando County, as appellants, the cousins, contended or in Taylor County, as insisted by the guardian.
The statement of the crucial issue adopted by the appellate court takes us immediately to Sec. 744.11 of the Florida guardianship law where we find the provision in paragraph (1) that in proceedings for the appointment of any guardian the venue shall be in the county where the incompetent resides.
Parenthetically, we comment that the original petition of Eula L. Hendricks bears the statement that Mrs. Mickler re *259 sided in Taylor County. The court gave some attention to paragraph (4) of the section hut we are not aware of any occasion to discuss the provisions of that section because there was no effort on the part of the guardian to switch the venue on account of a change of the domicile, inasmuch as the guardian had not been appointed in Hernando County from which Mrs. Mickler was moved. But the legislature did indicate, by providing that the venue would follow the domicile, that the appointment of the guardian should be in the county where the domicile was located.
The District Court of Appeal thought the whole dispute revolved around the factual proof as to Mrs. Mickler’s residence on the date of the appointment and rejected the contention of the guardian, supported solely by her own testimony, that the ward intended within the provision of the law to change her residence from Brooksville to Perry. The court, after stating the rule that such a change could be effected by a good faith intention to acquire a new legal residence accompanied by an actual removal, concluded that the overt act was absent if, indeed, we may add, the ward was mentally capable to make the decision.
The court then launched into a discussion of jurisdiction in cases of this sort referring to Sec. 394.22, Florida Statutes, F.S.A., providing that a person could be adjudged incompetent by the County Judge of any county “wherein the alleged incompetent resides or may be found.” So the power to act in the case reposed in the county judge of either Hernando County or Taylor County depending upon the place where the incompetent was “found” or resided. The actual power to act was in either.
The court interpreted the word “venue” to denote “limitation upon jurisdiction to entertain guardianship proceedings over the person and property of an incompetent * * *.” In other words, the court related jurisdiction to venue and decided the former was modified by the latter in situations like the instant one.
It was this treatment of the term “venue” that induced us to entertain the case for we have often decided that venue and jurisdiction have distinctly separate connotations. The latter signifies the power to act and certainly the county judge in either county had power to deal with an incompetent. On the other hand venue concerns the privilege of being accountable to a court in a particular location. The court interpreted the word “resides” as used in the act to mean “the last place of legal residence of the incompetent * * prior to the adjudication of incompetency.”
Pursuing the thought about the relationship of jurisdiction and venue, the court emphasized its view they were interlocked in the following language “it seems evident that the legislative intent was to rigidly fix jurisdiction in guardianship proceedings in the forum where in all likelihood the incompetent’s estate is located” and that ■'under paragraph (4):of Sec. 744.11 a means was afforded for “transferring the guardianship to another place upon' a proper showing of fact” in recognition of “the possibility of circumstances providing an exception to the requirements of subpara-graph (1) of said section.”
As we understand the pronouncement it was presupposed that despite the fixation of jurisdiction conditions could arise justifying the transfer of that jurisdiction to another court
The court continued by recalling decisions holding that persons sui juris were considered to have waived the “privilege” extended by venue statutes unless “timely asserted.” With these decisions we agree and we certainly have no criticism of the court’s observation, but it does point up, we think, the distinction between venue and jurisdiction which we feel should be *260 preserved. Fearing that the treatment of the problem by the District Court of Appeal would obscure this distinction and tend to confuse the law on the subject we were impelled to entertain the case.
The court distinguished this case from the decision of the District Court of Appeal, Second District, in In re De Hart, supra, in which it was shown that the next of kin, sui juris, filed a waiver to be appointed guardian while in the instant case no notice was given or waiver expressed. Quite the contrary, the next of kin here protested the appointment.
 Since the county judges of both counties had the power to act, Art. V, Sec. 7(3) of the Constitution, F.S.A., and, in our view, jurisdiction should be considered apart from venue, we think that in the last analysis the question here is whether or not there was a waiver of the privilege of having the guardianship adjudicated in Hernando County. And many of the facts appearing in the record lead to the conclusion that there was none.
In the first place although the interest of Mrs. Hendricks in the well-being of her old friend Mrs. Mickler was admirable from a humanitarian standpoint obviously they were not blood relatives. When the former applied for appointment as guardian she represented that the latter was a resident of Taylor County, although she had but recently been removed there. She represented, too, that Mrs. Mickler had been, on July 18, adjudged incompetent because she was incapacitated by senile dementia, and at the place in her petition provided for a listing of the names and addresses of persons most closely related to the incompetent, there appeared the notation “No known relatives.” Apparently there was no effort to comply with the requirements of Sec. 744.30, Florida Statutes, F.S.A., with reference to notice to relatives or reasonable search for them. The same day letters of guardianship issued.
Exactly five months later Ursula D’Ferro claiming to be a cousin of Mrs. Mickler sought to have the guardianship proceedings nullified on the grounds, among others, that no notice of the hearing on incompetency had been given as required by Sec. 744.33(2) of the Florida Statutes, F.S.A. and that Mrs. Hendricks had alleged that her prospective ward had no known relatives when the petitioner knew that Ursula D’Ferro was a cousin of Mrs. Mickler and resided in Columbia County.
The reply of Mrs. Hendricks to this assault on the proceedings was inconclusive. She stated that she did not know the “exact” relationship between these persons at the time her petition was filed and that “it was her understanding and belief that Ursula D’Ferro was only distantly related to said incompetent as a third or fourth cousin and that she did not consider that such relationship was sufficiently close to require notice or to be considered by the County Judge.” To say the least, this explanation as to the failure to attempt notice was unsatisfactory and as to the insufficiency of the relationship to justify consideration by the judge was presumptuous.
It should be noted here that the petition for appointment of a guardian was not heard at the conclusion of the hearing at which incompetency was adjudicated thereby rendering unnecessary the notice specified in Sec. 744.33(2), supra. The adjudication occurred 18 July, the petition was filed and the letters were issued 29 August. In these circumstances the requirement of notice was not rendered unnecessary.
The guardian’s reply concluded with the remarkable assertion that the attacker was not the one to make the assault on the proceeding, because she was “not the closest living relative of Florence M. Mickler” and thereby it was implied that she did, after all, know of another relative.
*261 Three months later came the petition of Rudy J. Inman announcing that he, as next of kin of Florence M. Mickler, joined in the assault being made by Ursula D’Ferro.
Having the view that the problem is one of venue rather than jurisdiction, and that the two may not be mixed, we face the question whether or not the record indicates that there was a waiver of the privilege as was held in the De Hart case. The ward, already declared incompetent, does not appear to have had the capacity to do so. The only two relatives in the picture certainly did not indicate a waiver. On the contrary they were plainly unhappy about the whole procedure.
The relevant statutes, Secs. 744.10 and 744.11, deal with domicile and residence, respectively, and although we do not feel obliged to enter an academic discussion of the distinction between the two, we are constrained to observe that under the first the domicile of the ward is the place where the guardian is lawfully appointed. We do not consider that the appointment here was lawful hence there is no reason to pursue the discussion on this phase of the case. The other statute, to which we have already referred, provides for venue where the incompetent resides. Under the circumstances of this case, we do not believe that the residence in Hernando County was abandoned or the residence in Taylor County was established.
It will be recalled that after Mrs. Mick-ler was sobered and transferred to Perry only five days elapsed before the inquisition on incompetency and only three more days passed before she was declared incapacitated.
Our view that the venue was Hernando County is strengthened by a study of the ward’s history and of the inventory filed by the guardian.
Mrs. Mickler had resided in Brooksville 57 years; her husband had served in the responsible position of Clerk of the Circuit Court; she had gone to Brooksville in 1904 to teach school and was acting in that position at least 16 years afterward.
The inventory shows that she has cash assets of approximately 17,000 dollars consisting of bank accounts in Lake City and Orlando, a checking account in a Brooksville bank and certain notes and mortgages totalling $1800. She owns her home in Brooksville valued at $10,000 and furnishings in her home of the worth of $1100.
It seems to us that the administration of her affairs should from a practical standpoint take place in Hernando County.
Though we have disagreed with the District Court of Appeal in the treatment of the principles of venue and jurisdiction we come to the same conclusion, namely, that the guardianship proceedings should be set aside.
The opinion of the District Court of Appeal reversing the judgment of the Cortnty Judge’s Court is approved with directions, however, that it be revised to conform to the views we have expressed.
DREW, C. J., and THORNAL and O’CONNELL, JJ., concur.
ROBERTS, CALDWELL and HOB-SON (Ret.), JJ., dissent.