# IN THE COURT OF APPEALS OF TENNESSEE
## MIDDLE SECTION AT NASHVILLE

FILED

**February 2, 2005**

**Cecil Crowson, Jr.**
Appellate Court Clerk

IN RE:  THE CONSERVATORSHIP )
OF LOIS G. CLAYTON )
 )
LILLIAN CLAYTON SALVATORE, )
Guardian of Lois G. Clayton, et al., )
 )
     Plaintiffs/Appellees, )
 )
 )   Rutherford Probate
 )
VS. )
 )
 )   Appeal No.
 )   01-A-01-9310-PB-00476
FREDERICK PAUL CLAYTON, )
JR., Conservator for Lois G. )
Clayton, et al., )
 )
     Defendant/Appellant. )

APPEAL FROM THE PROBATE COURT FOR RUTHERFORD COUNTY
AT MURFREESBORO, TENNESSEE

THE HONORABLE DAVID LOUGHRY, JUDGE

For the Plaintiffs/Appellees:

Richard Dance
DANCE, DANCE & LANE
Nashville, Tennessee

For the Defendant/Appellant:

Richard F. LaRoche, Sr.
Murfreesboro, Tennessee

## AFFIRMED AND REMANDED

WILLIAM C. KOCH, JR., JUDGE

# O P I N I O N

This appeal involves a dispute over the conservatorship of an elderly woman suffering from Alzheimer's Disease. The woman's son moved his mother to Tennessee against the wishes of his stepsister who had been appointed guardian in Florida, and filed an action in the Rutherford County Probate Court to be named conservator. The stepdaughter objected to her stepbrother's petition and demanded an accounting of her stepmother's property. The probate court dismissed the son's petition and ordered an accounting. The son asserts on this appeal that the probate court had jurisdiction over his petition. We have determined that the probate court properly dismissed the son's petition for the appointment of a conservator and properly ordered the son to account for his use of his mother's assets.

## I.

Lois G. Clayton lived in Okaloosa County, Florida. She had one child and two stepchildren. Frederick Clayton, Jr., her son, lived in Christiana, Tennessee. Lillian Clayton Salvatore and Margaret Clayton Bozian, her two stepdaughters, lived in Okaloosa County, Florida and Atlanta, Georgia respectively. Mr. Clayton was approximately fifteen years younger than Ms. Salvatore, his older stepsister.

In February 1989, Ms. Clayton retained counsel and prepared a will under Florida law. She appointed Ms. Salvatore as her personal representative and essentially divided her estate equally among her son and two stepdaughters.[1] She also stated that she desired Ms. Salvatore to be appointed as her guardian should she ever require one.

Ms. Clayton was living with Ms. Salvatore in January 1992. Fearing that her health was failing, she retained the same attorney who had drafted her will to prepare a formal declaration appointing Ms. Salvatore as the guardian of her property should she ever become incapacitated. This declaration was filed in the

---

[1]She stated specifically that it was her "intention that my step-daughters . . . are to share my estate equally with my son."

office of the Clerk of the Circuit Court for Opaloosa County. At the same time, Ms. Clayton executed a durable power of attorney appointing Ms. Salvatore as her attorney-in-fact and vesting in her broad authority with regard to her financial and medical affairs.

A short time later, Ms. Clayton filed a petition in the Circuit Court for Opaloosa County requesting the appointment of a guardian of her property because she was "incapable of the care, custody and management of her estate by reason of age or physical infirmity." On March 17, 1992, the circuit court entered an order appointing Ms. Salvatore as guardian for specific property owned by Ms. Clayton, including (1) a house in Shalimar, Florida valued at $62,000, (2) stock valued at $15,375, and (3) various cash accounts containing $115,878.

Ms. Salvatore found it increasingly difficult to care for her stepmother as Ms. Clayton's mental faculties failed. In July 1992, she filed a notice in the Circuit Court for Opaloosa County stating that her stepmother's mental condition had "deteriorated to the point where [she] . . . is unable to handle [Ms. Clayton] . . . by herself." She also notified the court that she had moved Ms. Clayton to a nursing home in Raleigh, North Carolina where Ms. Salvatore's children lived and that she intended to move there herself to be near her stepmother. Ms. Salvatore also informed the court that "[a]ll [Ms. Clayton's] . . . accounts will be retained in Florida and the Guardian will continue to comply with the Florida guardianship law and rules of procedure and shall be subject to the order of the Florida court with respect to the guardianship."

Mr. Clayton visited his mother in the Raleigh nursing home from time to time. In November 1992, Ms. Clayton broke her hip in a fall and was hospitalized for two weeks and was then moved to another facility for rehabilitation. Mr. Clayton visited his mother in the hospital and talked with her caregivers by telephone on many occasions. He became concerned when his mother's nurses reported that she was not eating or responding well to therapy.

Mr. Clayton visited his mother on January 2, 1993. He decided that he could provide his mother better care than Ms. Salvatore. Accordingly, he removed

Ms. Clayton from the nursing home under the pretext that he was driving her to Ms. Salvatore's home for a visit and drove her back to Murfreesboro where he placed her in the Murfreesboro Health Care Center. Mr. Clayton did not consult Ms. Salvatore about moving his mother to Murfreesboro.

On January 8, 1993, Mr. Clayton filed a petition in the Rutherford County Probate Court requesting appointment as his mother's conservator. He supported the petition with two physicians' affidavits stating that Ms. Clayton's memory and judgment were impaired and that she was incapable of managing her own affairs or of making judgments concerning her own well-being. The petition stated that Ms. Clayton was a "resident" of the Murfreesboro Health Care Center and that Mr. Clayton was her "only surviving child." It did not disclose the Florida guardianship proceedings, identify Ms. Salvatore or Ms. Bozian, or state the circumstances under which Ms. Clayton had been brought to Murfreesboro. Neither Ms. Salvatore nor Ms. Bozian were served with copies of this petition.

The probate court appointed a guardian ad litem for Ms. Clayton, and on January 12, 1993, the guardian filed a report recommending that Mr. Clayton be appointed as his mother's conservator. The guardian alluded to the Florida proceedings, but his report does not indicate that he had discussed Ms. Clayton's circumstances with Ms. Salvatore. The probate court filed an order on January 15, 1993, appointing Mr. Clayton conservator and ordering him to intervene in the Florida proceeding to demand an accounting and to terminate the management of Ms. Clayton's affairs in Florida.

Armed with the probate court's order, Mr. Clayton retained Florida counsel and sought to terminate the proceedings in the Circuit Court for Opaloosa County. On April 12, 1993, Ms. Salvatore requested permission to intervene in the Tennessee proceeding. She requested the probate court to set aside its order appointing Mr. Clayton as his mother's conservator, to declare her Ms. Clayton's guardian in accordance with Tenn. Code Ann. § 35-50-107(a)(2)(E) (Supp. 1994),[2]

---

[2]Tenn. Code Ann. § 35-50-107(a)(2)(E) permits persons related by blood or marriage to serve as guardians or conservators of incompetent persons regardless of their residence.

and to require Mr. Clayton to account for Ms. Clayton's property since he removed her from the nursing home in Raleigh.

On May 21, 1993, the Circuit Court for Opaloosa County entered an order denying Mr. Clayton's motion to remove Ms. Salvatore as guardian of Ms. Clayton's property and to authorize him to manage his mother's property. The court also stayed all proceedings with regard to terminating Ms. Salvatore's guardianship pending a final order in the Tennessee proceeding.

At the conclusion of a hearing on September 10, 1993, the probate court announced that it did not have jurisdiction to entertain Mr. Clayton's petition because Ms. Clayton continued to be a resident and domiciliary of Florida and because the Florida court had already acquired jurisdiction over her. On September 13, 1993, it entered an order, dismissing Mr. Clayton's petition, withdrawing its orders appointing a guardian ad litem and appointing Mr. Clayton as his mother's conservator, and directing Mr. Clayton to filed an accounting.

Ms. Salvatore made arrangements to return Ms. Clayton to the nursing home in Raleigh as soon as the probate court issued its decision. On September 16, 1993, Mr. Clayton obtained an ex parte temporary restraining order preventing Ms. Salvatore from removing her mother from the Murfreesboro Health Care Center. The probate court later declined to dissolve this restraining order, and this court also declined to set aside the restraining order pending Mr. Clayton's appeal.

## II.

Mr. Clayton asserts that the probate court erred by dismissing his petition to be appointed his mother's conservator. He argues that the petition was proper because his mother was "residing" in Rutherford County when it was filed. We have determined that the probate court correctly decided that Ms. Clayton was not a resident of Rutherford County for the purpose of Tenn. Code Ann. § 34-13-101(b) (Supp. 1994). We have also determined that the probate court should have stayed its hand, even if Ms. Clayton was a resident of Rutherford County, because

-5-

of the guardianship proceedings pending in Florida and because of the manner in which Ms. Clayton was brought into Tennessee.

## A.

The controlling legal issue in this case is whether Ms. Clayton was a resident of Rutherford County when Mr. Clayton filed his petition for the appointment of a conservator. Tenn. Code Ann. § 34-13-101 provides:

> (a) Actions for the appointment of a conservator may be brought in a court exercising probate jurisdiction or any other court of record in any county in which there is venue.

> (b) An action for the appointment of a conservator shall be brought in the county of residence of the alleged disabled person.

Because of Tenn. Code Ann. § 34-13-101(b), venue is jurisdictional in conservatorship proceedings, and probate and other local trial courts should not exercise jurisdiction over the person or property of disabled persons who are not residents of the county within their territorial jurisdiction.

The conservatorship statutes do not define "county of residence" for the purpose of determining venue. The term "residence" may mean simply a person's present place of abode, *Brown v. Hows*, 163 Tenn. 178, 182, 42 S.W.2d 210, 211 (1931), or it may mean a person's legal residence or domicile. *Brown v. Brown*, 150 Tenn. 89, 91-92, 261 S.W. 959, 959-60 (1924); *Coke v. Coke*, 560 S.W.2d 631, 633 (Tenn. Ct. App. 1977). Since these two meanings have significantly different legal consequences, we must decide the meaning of the term as it appears in Tenn. Code Ann. § 34-13-101(b).

When used to refer to a person's place of abode, the term "residence" does not require that the person intend to remain at that particular place. *Brown v. Hows*, 163 Tenn. at 182, 42 S.W.2d at 211. However, when used to refer to a person's domicile or legal residence, the term indicates a particular place where a person has a permanent home and to which the person has a concurrent intention

to return and to remain. *Denny v. Sumner County*, 134 Tenn. 468, 473-74, 184 S.W. 14, 16 (1915); *Snodgrass v. Snodgrass*, 49 Tenn. App. 607, 611, 357 S.W.2d 829, 831 (1961). A person may have more than one residence but may have only one domicile or legal residence. *Bearman v. Comatsos*, 215 Tenn. 231, 236, 385 S.W.2d 91, 93 (1964); *Middle Tenn. Elec. Membership Corp. v. State ex rel. Adams*, 193 Tenn. 513, 516, 246 S.W.2d 958, 959 (1952); *Svoboda v. Svoboda*, 61 Tenn. App. 444, 449, 454 S.W.2d 722, 724 (1969).

A person cannot acquire a new domicile or legal residence without first abandoning another. *Denny v. Sumner County*, 134 Tenn. at 474, 184 S.W. at 16; *McElhaney v. McElhaney*, 647 S.W.2d 643, 644 (Tenn. Ct. App. 1982). Accordingly, to change domicile or legal residence, a person must: (1) actually change his or her residence to a new place; (2) intend to abandon his or her old domicile; and (3) intend to establish a new domicile at the new residence. *Denny v. Sumner County*, 134 Tenn. at 474, 184 S.W. at 16; *Sparks v. Sparks*, 114 Tenn. 666, 668, 88 S.W. 173, 174 (1905). A person who is mentally incompetent cannot voluntarily change domicile or legal residence because he or she does not have the requisite intent either to abandon their old domicile or to acquire a new one. *In re Chaffee*, 211 Tenn. 88, 92, 362 S.W.2d 467, 469 (1962); *Hannon v. Hannon*, 185 Tenn. 307, 309-10, 206 S.W.2d 305, 306 (1948).

Our responsibility when construing a statute is to ascertain and to give effect to the statute's purpose without unduly restricting or expanding the statute's coverage beyond its intended scope. *Tibbals Flooring Co. v. Huddleston*, 891 S.W.2d 196, 198 (Tenn. 1994); *Roseman v. Roseman*, 890 S.W.2d 27, 29 (Tenn. 1994); *Bruce v. Hamilton*, 894 S.W.2d 274, 278 (Tenn. Ct. App. 1994). Our search for a statute's purpose begins with the words of the statute itself. If the statute is unambiguous, we need only enforce the statute as written. *Carson Creek Vacation Resorts, Inc. v. State*, 865 S.W.2d 1, 2 (Tenn. 1993); *Hamblen County Educ. Ass'n v. Hamblen County Bd. of Educ.*, 892 S.W.2d 428, 432 (Tenn. Ct. App. 1994). If, however, a statute is ambiguous, we may invoke the various rules of statutory construction, *Stewart Title Guar. Co. v. McReynolds*, 886 S.W.2d 233, 235 (Tenn. Ct. App. 1994) (no reason to resort to rules of construction when the statutory language is clear and plain); *Davenport v. Chrysler Credit Corp.*, 818

S.W.2d 23, 27 (Tenn. Ct. App. 1991), and we may consider the existing law, the circumstances contemporaneous with the enactment of the statute, the circumstances inducing the statute's enactment, and the evil sought to be addressed. *Still v. First Tenn. Bank*, 900 S.W.2d 282, 284 (Tenn. 1995).

The legislative history of a statute can provide insight into the purpose of an ambiguous statute. *Universal Computer Co. v. Olsen*, 677 S.W.2d 445, 447 (Tenn. 1984); *Watts v. Putnam County*, 525 S.W.2d 488, 492 (Tenn. 1975). Accordingly, courts confronted with statutory language that conveys more than one meaning may consider the legislative debates surrounding the statute's enactment. *Chapman v. Sullivan County*, 608 S.W.2d 580, 582 (Tenn. 1980); *City of Oak Ridge v. Roane County*, 563 S.W.2d 895, 899 (Tenn. 1978).

A statute is ambiguous if it is capable of conveying more than one meaning. *Evans v. Young*, 201 Tenn. 368, 381, 299 S.W.2d 218, 224 (1957); *Atlantic Coast Line R.R. v. Richardson*, 121 Tenn. 445, 460, 117 S.W. 496, 499 (1908). We find Tenn. Code Ann. § 34-13-101(b) to be ambiguous because the term "county of residence" has more than one meaning. Accordingly, we must choose the meaning of "county of residence" that is the most consistent with the statute's purpose.

The legislative debates with regard to the enactment of Tenn. Code Ann. § 34-13-101(b) in 1992[3] provide no insight into the intended meaning of "county of residence." During the hearings before the House Judiciary Committee, the bill's sponsor was asked whether the term "residence" referred to the disabled person's domicile. Regrettably, the sponsor did not answer the question responsively. He stated only that "in the appointment of a conservator, the hearing should be brought in the county of residence of the alleged disabled person."

In the absence of legislative history or contextual sign posts, we must base our construction of Tenn. Code Ann. § 34-13-101(b) on the nature and purpose of conservatorship proceedings. The purpose of a conservatorship proceeding is to protect the person and property of a disabled person. *Walker v. Graves*, 174 Tenn. 336, 341, 125 S.W.2d 154, 156 (1941); Tenn. Code Ann. § 34-13-107(3), (4)

---

[3] Act of April 20, 1992, ch. 794, § 40, 1992 Tenn. Pub. Acts 407, 421.

(Supp. 1994). The court itself is ultimately responsible for the disabled persons who come under its care and protection, *Hinds v. Buck*, 177 Tenn. 444, 448, 150 S.W.2d 1071, 1072 (1941); *In re Ellis*, 822 S.W.2d 602, 607 (Tenn. Ct. App. 1991), and thus conservators act as the court's agent and are under the court's supervision.

Because of the fiduciary nature of the responsibilities, the court with the closest ties to the disabled person and his or her family and property should be the court that exercises jurisdiction in a conservatorship proceeding. As a general matter, the court of the disabled person's domicile will have the closest ties to the disabled person and will be most able to exercise control over the disabled person, the conservator, and the disabled person's family and property.

Courts from other jurisdictions called upon to construe statutes similar to Tenn. Code Ann. § 34-13-101(b) have equated a disabled person's "residence" with his or her domicile. *In re Schley*, 1 N.Y.S. 2d 306, 307 (App. Div. 1938); *Powell v. Judd*, 203 S.W.2d 871, 873 (Tex. Ct. App. 1947); *Owens v. Stovall*, 64 S.W.2d 360, 362 (Tex. Ct. App. 1933). Similarly, a majority of jurisdictions, deferring to the courts of the disabled person's domicile, have declined to take jurisdiction over disabled persons who have been found in their territorial jurisdiction. *In re Estate of Mosier*, 54 Cal. Rptr. 447, 449 (Cal. Ct. App. 1961); *Rickey v. People*, 267 P.2d 1021, 1024 (Colo. 1954); *Sorrells v. Sorrells*, 274 S.E.2d 314, 316-17 (Ga. 1981); *In re Olerich's Estate*, 176 N.E.2d 549, 550-51 (Ill. App. Ct. 1961); *Sumrall's Comm. v. Commonwealth*, 172 S.W. 1057, 1059 (Ky. Ct. App. 1915); *Turner v. Turner*, 637 S.W.2d 764, 767 (Mo. Ct. App. 1982); *In re Guardianship of Fisher*, 632 N.E.2d 533, 535 (Ohio Ct. App. 1993); *In re Gray's Estate*, 250 P. 422, 423-24 (Okla. 1926); *In re Sylvester*, 598 A.2d 76, 81-82 (Pa. Super. Ct. 1991); *Petty v. Petty*, 592 S.W.2d 423, 427 (Tex. Ct. App. 1979); *Town of Carlton v. State Dept. of Pub. Welfare*, 74 N.W.2d 340, 341-42 (Wis. 1956); *Layton v. Pribble*, 105 S.E.2d 864, 868-69 (Va. 1958).[4]

---

[4]Other states have exercised jurisdiction over disabled persons who are present in their jurisdiction. *In re Guardianship of Powers*, 841 S.W.2d 626, 627 (Ark. 1992); *In re Mickler's Guardianship*, 163 So. 2d 257, 259-60 (Fla. 1964); *In re Miller*, 620 P.2d 800, 803 (Kan. 1980); *In re Guardianship of Campbell*, 11 N.W.2d 786, 789 (Minn. 1943).

We have determined that the majority rule is most consistent with Tennessee's understanding of the role and purpose of a conservatorship proceeding. Accordingly, we hold that the term "county of residence" in Tenn. Code Ann. § 34-13-101(b) means the county of the disabled person's legal residence or domicile and that our courts cannot exercise personal jurisdiction in proceedings to appoint a conservator over disabled persons who just happen to be within their territorial jurisdiction.[5]

Ms. Clayton had become incompetent by July 1992 before Ms. Salvatore moved her to Raleigh, North Carolina. She remained incompetent when Mr. Clayton spirited her away from the nursing home in Raleigh and placed her in a nursing home in Rutherford County. Ms. Clayton has not regained her faculties since being brought to Rutherford County in January 1993. Even though Ms. Clayton has been physically present in Rutherford County, she is not there of her own volition. She lacks the mental capacity to appreciate her surroundings or to change her domicile. Therefore, her legal residence or domicile is Opaloosa County, Florida, her last domicile while she was competent. Since she can have only one domicile, Ms. Clayton's domicile is Opaloosa County rather than Rutherford County, Tennessee or Raleigh, North Carolina.

Since Ms. Clayton is a legal resident of Opaloosa County, we find that Rutherford County is not her "county of residence" for the purpose of Tenn. Code Ann. § 34-13-101(b). Therefore, we find that the probate court properly dismissed Mr. Clayton's petition for the appointment of a conservator.

**B.**

Even if the probate court could have acted on Mr. Clayton's petition for the appointment of a conservator, it properly declined to do so under the facts of this case. The probate court was not faced with an emergency situation requiring immediate judicial intervention in order to protect Ms. Clayton or her estate. Ms. Clayton's physical and mental conditions were stable, and Mr. Clayton had no

---

[5]Our decision in this case applies to conservatorship proceedings pursuant to Tenn. Code Ann. §§ 34-13-101, -109 (Supp. 1994). It does not affect the court's inherent jurisdiction to make temporary orders to protect a disabled person in emergency situations.

reliable evidence that Ms. Salvatore was about to waste or dissipate Ms. Clayton's property.

Approving Mr. Clayton's conduct in this case would set an unfortunate precedent for future cases. Intra-family hostility is disruptive and inimical to a disabled person's best interests. Granting Mr. Clayton's petition in light of his conduct, no matter how well-motivated, would signal this court's approval of this type of behavior. Mr. Clayton had other recognized, less disruptive avenues available to challenge Ms. Salvatore's care of his mother short of surreptitiously removing her from the nursing home in North Carolina and bringing her to Tennessee.

In addition, the probate court should have deferred to the on-going Florida guardianship proceedings on the basis of judicial comity. Comity is a discretionary doctrine by which the courts of one state may, out of deference and respect, give effect to the decisions of the courts of another state even when they are not required to do so by the Full Faith and Credit Clause of the United States Constitution. *Chapman Chem. Co. v. Reichhold Chem., Inc.*, Shelby Eq. No. 8, slip op. at 3, 12 T.A.M. 23-7 (Tenn. Ct. App. April 24, 1987) (No Tenn. R. App. P. 11 filed). It may be granted or withheld depending on the particular facts, laws, and policies present in an individual case. *Hyde v. Hyde*, 562 S.W.2d 194, 196 (Tenn. 1978). Our courts need not extend comity to the decisions of the courts of other states if they are contrary to our law or public policy. *Paper Prods. Co. v. Doggrell*, 195 Tenn. 581, 585, 261 S.W.2d 127, 129 (1953); *Finley v. Brown*, 122 Tenn. 316, 335, 123 S.W. 359, 364 (1909).

We have carefully reviewed Florida's statutes dealing with guardians and conservators and find no conflicts with our statutes protecting the person and property of incompetent persons. We also find no jurisdictional defect in the proceedings in the Opaloosa County Circuit Court. Opaloosa County remains Ms. Clayton's legal residence and the place where her property is located. Since the Opaloosa County Circuit Court first acquired and still retains jurisdiction over Ms. Clayton's property, we find that the probate court properly declined to act on Mr. Clayton's petition for the appointment of a conservator in Tennessee.

## III.

As a final matter, we turn to Ms. Salvatore's request that Mr. Clayton be required to account for Ms. Clayton's property while she has been in Rutherford County. The probate court ordered Mr. Clayton to file an accounting even though it determined that it never acquired jurisdiction over Ms. Clayton. We have concluded that requiring Mr. Clayton to account for his use of his mother's property is appropriate under the facts of this case.

The courts are ultimately responsible for the property of persons for whom they appoint conservators or guardians. *Hinds v. Buck*, 177 Tenn. at 448, 150 S.W.2d at 1072. They retain continuing control over guardians and conservators because the persons who accept these appointments become "quasi-officials" of the court appointing them. *See Logan v. Graper*, 155 Tenn. 565, 568, 4 S.W.2d 955, 956 (1927). Part of this control includes the authority to order an accounting when a conservatorship is terminated. Tenn Code Ann. § 34-13-108(e) (Supp. 1994).

Even though the probate court eventually determined that it did not have jurisdiction to appoint a conservator for Ms. Clayton, it was the probate court's order, and nothing else, that justified Mr. Clayton's control over his mother's assets since January 1993. Thus, Mr. Clayton has been an officer of the court from the time of his appointment as his mother's conservator. Now that the probate court is withdrawing Mr. Clayton's authority to act as his mother's conservator, it may require him to account for his use of his mother's property.

## IV.

We affirm the dismissal of the petition for the appointment of a conservator and the order directing Mr. Clayton to account for his use of his mother's property. We remand the case to the probate court for whatever other proceedings may be required and tax the costs of this appeal to Frederick P. Clayton, Jr. and his surety for which execution, if necessary, may issue.

_____
WILLIAM C. KOCH, JR., JUDGE

CONCUR:

_____
HENRY F. TODD, PRESIDING JUDGE

_____
SAMUEL L. LEWIS, JUDGE