

# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
March 22, 2017 Session

## STATE OF TENNESSEE DEPARTMENT OF CORRECTION v. GEORGE TODD

**Appeal from the Probate Court for Davidson County**
**No. 16P-1162       Randy M. Kennedy, Judge**

_____

### No. M2016-02038-COA-R3-CV

_____

A prison inmate appeals the trial court's decision to appoint a limited conservator for healthcare decisions over the inmate and give the conservator the authority to consent to the forcible treatment on behalf of the inmate. Discerning no error, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Probate Court Affirmed**

J. STEVEN STAFFORD, P.J.,W.S., delivered the opinion of the court, in which BRANDON O. GIBSON and KENNY ARMSTRONG, JJ., joined.

Danny Ross Dickerson, Nashville, Tennessee, for the appellant, George Todd.

Herbert H. Slatery, III, Attorney General and Reporter; Andreé S. Blumstein, Solicitor General; Eric A. Fuller, Assistant Attorney General, for the appellee, Tennessee Department of Correction.

## OPINION

### Background

Respondent/Appellant George Todd is an inmate in the custody of the Petitioner/Appellee Tennessee Department of Correction ("TDOC"). In 1995, Mr. Todd entered into a negotiated plea agreement in which he agreed to plead guilty to second degree murder for a sentence of forty-five years. Mr. George's sentence is currently set to expire in January 2022.

This is not the first conservatorship case involving Mr. Todd and TDOC. Mr. Todd was previously adjudicated mentally incompetent and placed under a limited conservatorship. This limited conservatorship terminated upon Mr. Todd's parole from

prison in 2012, but he soon returned to TDOC custody in November 2013, after violating his parole. Accordingly, TDOC filed a petition in January 2016 to again have Mr. Todd placed under a limited conservatorship in order to make health care decisions. Mr. Todd opposed the petition. Prior to an evidentiary hearing on the petition, Mr. Todd's mental health improved to the point that his treating physician no longer believed that a limited conservatorship was appropriate. The petition was therefore voluntarily dismissed with prejudice.

Unfortunately, in the opinion of Mr. Todd's physician, his mental health began to seriously deteriorate. Consequently, on July 7, 2016, TDOC filed another petition for a limited conservatorship over Mr. Todd. TDOC specifically requested that the conservator appointed be given authority "to provide consent for medical and psychiatric treatment that [Mr. Todd] may require while he is incarcerated; including the forcible administration of medications if the conservator finds that such is necessary." On the same day the petition was filed, TDOC filed a motion to submit a report from two evaluations performed on Mr. Todd: one by Mr. Todd's treating physician, prison physician Dr. Molly O'Toole, and one by the independent Treatment Review Committee. Dr. O'Toole noted in her evaluation that Mr. Todd currently suffers from schizoaffective disorder, bipolar type. Dr. O'Toole opined that Mr. Todd's condition had deteriorated since he stopped taking psychotropic medication, making him unable to be an informed participant in decisions about his healthcare. Dr. O'Toole further noted that Mr. Todd admitted to having split personalities and once informed Dr. O'Toole that he "could kill [Dr. O'Toole] because [she is] a witch." Similarly, the psychiatrist who performed the independent evaluation noted that Mr. Todd "exhibit[ed] active signs of mental illness," despite his refusal to acknowledge his disorder, and recommended involuntary administration of medication.

The trial court appointed Mr. Todd both a guardian ad litem and an attorney ad litem. The guardian ad litem filed a detailed report after meeting with Mr. Todd, his family members, and his former co-worker, who reported conflicting views of Mr. Todd's mental health.[1] According to Mr. Todd's mother and sister, Mr. Todd often experiences periods of stability followed by mental breakdowns, especially while incarcerated. Mr. Todd's sister insisted that Mr. Todd could not be trusted, that he does not have a firm grasp on reality, and that he has claimed to be God, Jesus, or other religious figures. According to Mr. Todd's sister, he had "gone off the deep end" after his parole was revoked and his father passed away. Mr. Todd's sister also indicated that Mr. Todd suffers from paranoia and believes that "everyone is out to get him." In November

---

[1] The guardian ad litem's report was apparently originally filed in connection with the January 2016 conservatorship action that was later voluntarily dismissed. Therefore, it was not included in the record on appeal. Mr. Todd filed a motion on March 29, 2017 to supplement the appellate record to include the report of the guardian ad litem. In the motion, Mr. Todd asserted that the report had been considered by the trial court in the underlying matter. TDOC did not oppose the supplementation and it was granted by this Court. Accordingly, we will consider the guardian ad litem's report as substantive evidence in this case.

2015, Mr. Todd met with his sister in prison; Mr. Todd's sister indicated that he "acted very strangely and was alternating between extreme emotions, crying one moment and laughing the next." Mr. Todd's mother likewise stated that Mr. Todd once claimed to be the devil and that he suffers from delusions.

In contrast, Mr. Todd's co-worker while he was on parole testified to Mr. Todd's stability when not incarcerated. According to the co-worker, Mr. Todd helped her give presentations at work, maintained his own clean apartment, paid all his bills, and otherwise did "extremely well adjusting to life outside of prison." According to the co-worker, Mr. Todd was not taking medications while on parole because "he wanted his mind to be clear." Mr. Todd's co-worker also believed that the revocation of Mr. Todd's parole was wrongful and that he was fully capable of managing his own affairs without a conservator.

The medical records detailed in the guardian ad litem's report, however, told a starkly different picture of Mr. Todd's mental health after he was incarcerated in November 2013. According to the record, Mr. Todd engaged in a planned hunger strike from September 9th to September 12th, 2015 to protest the revocation of his parole. At the time the strike began, the records indicated that Mr. Todd was exhibiting no delusions. By September 12th, however, Mr. Todd was "displaying paranoid behavior and . . . claimed that he had been kidnapped and the Governor was going to pick him up." On October 5, 2015, the records indicated that Mr. Todd was exhibiting odd behavior, such as delusions, confusion as to why he was in custody, and "a decline in the activities of daily living." At this point, Mr. Todd was diagnosed with Schizophrenia Disorder, and the appointment of a conservator was recommended by his physician. On October 15, 2015, Mr. Todd further declined, exhibiting mania, delusions, varying mood, lack of time reality, lack of hygiene, and "refusal of clothes, bedding, and food." The guardian ad litem noted that Mr. Todd was noncompliant "off and on through October, November, and December." The records note, however, that Mr. Todd stabilized once he began taking his medication regularly.

The guardian ad litem also met in person with Mr. Todd in February 2016. At the time, Mr. Todd was voluntarily taking an anti-psychotic medication to avoid forcible injections. During this meeting, the guardian ad litem found Mr. Todd to be well-spoken, articulate, and well-informed regarding his current incarceration, treatment, diagnosis, and history. Mr. Todd denied that he currently or previously suffered from a mental illness; instead, Mr. Todd claims that his Schizophrenia diagnosis was the result of "false answers he had given on examinations as a way of protecting his incarceration." Mr. Todd explained that although he does not need the medication prescribed and does not wish to take it, he had agreed to voluntarily take his medication rather than receive forcible injections. The guardian ad litem noted that the only time that Mr. Todd exhibited odd behavior was during the discussion of his religious beliefs, when he claimed that "the prison wanted to medicate him specifically to 'train out' his religious beliefs."

The guardian ad litem's report also discussed Mr. Todd's educational efforts during his period of parole. According to records from National College, Mr. Todd consistently attended classes from Spring 2013 to Spring 2015. During this time, Mr. Todd "seems to have done quite well." In the May term of 2015, however, Mr. Todd attempted only two classes, withdrawing from one, and thereafter withdrew from all classes. The guardian ad litem could find no explanation for Mr. Todd's decision to stop attending classes when he was so close to receiving his Associate's Degree.

Finally, the guardian ad litem made its recommendation as to whether a conservatorship was needed. The trial court first noted that the case was "extremely difficult and . . . required more investigation and time than typically needed." The guardian ad litem noted that while Mr. Todd appeared to have functioned well outside of prison, he had substantially deteriorated since his return to incarceration, such that he has "serious difficulty managing his mental condition." Because of Mr. Todd's serious mental breakdowns during times of stress," his delusions, and "the serious decline in activities of daily living," the guardian ad litem recommended that a conservator be appointed for Mr. Todd.

On July 12, 2016, the trial court also granted TDOC's motion to file certain documents under seal. Mr. Todd, by and through his counsel, filed a response in opposition to the appointment of a conservator on August 2, 2016. Therein, Mr. Todd denied that he was incapable of making rational decisions regarding his treatment needs. Additionally, Mr. Todd asserted that TDOC had no jurisdiction over him due to his wrongful incarceration. Mr. Todd also objected to the forcible administration of medication, asserting that the practice was not the least restrictive means available and violates his First Amendment right to the free exercise of his religion. According to Mr. Todd, certain drugs also have debilitating effects on him, the effects of which prevent Mr. Todd from preparing for future legal proceedings related to his parole.

A hearing occurred on August 25, 2016. No transcript or statement of the evidence is included in the record. The trial court, however, entered a written order containing detailed findings regarding the testimony presented on September 2, 2016. Our recitation of the evidence presented is therefore derived solely from the trial court's order. According to the trial court, Mr. Todd testified that he has no illnesses, disorders, or disabilities that prevent him from making his own medical decisions. In support, Mr. Todd noted his "stable life while he was on parole." Mr. Todd admitted, however, that he had "pretended" to have an illness in the past but that he would not do so in the future. Mr. Todd further indicated that subjecting him to forcible medication would "be an unduly rigorous form of punishment within the meaning of the Tennessee Constitution" and that it would violate his sincerely held religious beliefs to "accept the introduction of an artificial substance into his body[.]"

Dr. O'Toole testified at trial by videoconference. The trial court also considered her sworn affidavit. Dr. O'Toole testified that she is Mr. Todd's treating physician and that he is in need of psychiatric medication. According to Dr. O'Toole, Mr. Todd is incapable of making his own healthcare decisions. As the trial court later stated:

> In his present state, Dr. O'Toole testified, [Mr. Todd] does not believe that he has such illness as she has diagnosed. She acknowledges that she did previously allow for him to have a trial of going without the medication she would otherwise prescribe. She notes, however, that his condition has since worsened substantially. It is Dr. O'Toole's opinion that [Mr. Todd] is not presently capable of making rational decisions regarding his mental and medical treatment and will not reliably be able to make such decisions for himself, going forward, under present circumstances. Dr. O'Toole affirmed by her testimony that her goal with [Mr. Todd], as with any patient, is to provide treatment on the basis of the using the lowest effective dose of any medication, and the least intrusive means of providing such treatment.

As previously noted, the trial court entered a final order in this cause on September 2, 2016. As an initial matter, the trial court memorialized its oral rulings to deny Mr. Todd's oral motions to dismiss based upon the trial court's purported lack of subject matter jurisdiction over the case and TDOC's lack of authority over Mr. Todd due to Mr. Todd's allegedly illegal sentence. The trial court next ruled that TDOC presented sufficient evidence that Mr. Todd was a person with a disability within the meaning of Tennessee Code Annotated section 34-1-101(13) and that he is presently incapable of making his own healthcare decisions. The trial court noted that, despite Mr. Todd's contention that his prior mental health issues were contrived, "there is significant and overwhelming medical evidence, which is clear and convincing, that he does have a serious and disabling illness, for which he does require medical treatment." The trial court further stated that:

> [T]he nature and extent of [Mr. Todd's] disability are such that [Mr. Todd] cannot give informed consent to medical and mental examinations and treatment at this time and requires a Limited Conservator to give such consent. The Court does not ignore the reality that medical treatments often do have unwanted side effects, but the Court notes Dr. O'Toole's testimony that she intends to work with [Mr. Todd] in order to find the plan of treatment that is optimal for his needs while also being as accommodating as possible of [Mr. Todd's] preferences.

Accordingly, the trial court granted TDOC's petition for a limited conservatorship over Mr. Todd for the purpose of making Mr. Todd's healthcare decisions, including the forcible administration of medical treatment "such as the Limited Conservator believes serves [Mr. Todd's] needs[.]" Mr. Todd thereafter timely appealed to this Court.

## Issues Presented

Mr. Todd presents several issues, which are taken, and slightly restated, from his appellate brief:

1. Whether the trial court's finding that Mr. Todd is a disabled person in need of a conservator causes Mr. Todd's original plea in his current sentence to become not knowing, and not voluntary if made during a period of incompetence, or continuing disability, thus becoming a violation of due process causing a lack of jurisdiction and/or an illegal sentence.
2. Whether the means of applying the conservatorship proposed by TDOC is an unnecessarily rigorous application of Mr. Todd's sentence, such as to violate Article I, Section 13 of the Tennessee Constitution.
3. Whether the means of applying the conservatorship imposed by the trial court, as administered by TDOC, violated the Free Exercise of Religion clause of the First Amendment of the U.S. Constitution by administering mind altering pharmaceuticals which violate Mr. Todd's sincerely held religious beliefs.
4. Whether the conservatorship proposed by TDOC is the least restrictive means of achieving TDOC's legitimate security related interests in the dangerous environment of prison.

## Analysis

This case involves the trial court's decision to place Mr. Todd under a limited conservatorship for healthcare decisions. "The purpose of a conservatorship proceeding is to protect the person and property of a [person with a disability]." *In re Conservatorship of Clayton*, 914 S.W.2d 84, 90 (Tenn. Ct. App. 1995) (citations omitted). "'Conservators are court appointed fiduciaries who act as agents of the court and their rights and responsibilities are set forth in the court's orders.'" *In re Lawton*, 384 S.W.3d 754, 761 (Tenn. Ct. App. 2012) (quoting *AmSouth Bank v. Cunningham*, 253 S.W.3d 636, 641 (Tenn. Ct. App. 2006)). A conservator's fiduciary position of trust is "of the highest and most sacred character." *Grahl v. Davis*, 971 S.W.2d 373, 377 (Tenn. 1998) (citation omitted). "The court itself is ultimately responsible for [persons with a disability] who come under its care and protection[.]"*Clayton*, 914 S.W.2d at 90 (citations omitted).

In order to grant a conservatorship, "[t]he court must find by clear and convincing evidence that the respondent is fully or partially disabled and that the respondent is in need of assistance from the court before a fiduciary can be appointed." Tenn. Code Ann. § 34-1-126. A "[p]erson with a disability" is defined as "any person eighteen (18) years of age or older determined by the court to be in need of partial or full supervision,

- 6 -

protection, and assistance by reason of mental illness, physical illness or injury, developmental disability, or other mental or physical incapacity[.]" *Id.* § 34-1-101(13). When the trial court finds that a conservatorship is needed, it "has an affirmative duty to ascertain and impose the least restrictive alternatives upon the person with a disability that are consistent with adequate protection of the person with a disability and the property of the person with a disability." *Id.* § 34-1-127. Mr. Todd does not argue that the trial court erred in finding sufficient evidence that he was a person with a disability in need of a limited conservatorship; rather, he makes several arguments addressing the trial court's jurisdiction, his constitutional rights, and whether the trial court imposed the least restrictive alternative available to further TDOC's compelling state interest. We will address each argument in turn.

## I.

Mr. Todd first argues that the 2016 finding that Mr. Todd is a person with a disability in need of conservatorship served to invalidate his 1986 agreed plea that placed him in prison. As such, Mr. Todd asks this Court to conclude that Mr. Todd's current mental health provides a "proper subject for habeas corpus relief."

This argument is misplaced. First, we note that this is a conservatorship case, not a habeas corpus case. The claims in the trial court did not involve a petition for habeas corpus. Although Mr. Todd made an oral motion to dismiss on the basis that his sentence is illegal, no counter-complaint or other pleading was ever filed asking for habeas corpus relief. In fact, in his pre-formatted notice of appeal, Mr. Todd specifically noted that his case was civil, rather than a habeas corpus case, which was also provided as an option. Mr. Todd cannot now characterize this action as a habeas corpus action.

Moreover, even if a habeas corpus petition had been filed in conjunction with the conservatorship proceeding, this Court has no jurisdiction to adjudicate such an appeal. The Court of Criminal Appeals has previously held that "for the purposes of appeal, habeas corpus cases involving incarcerated criminal defendants are 'criminal actions.'" *Davis v. State*, 261 S.W.3d 16, 20 (Tenn. Crim. App. 2008) (citing Tenn. R. App. P. 3(b)) (categorizing appeals from "a final judgment in a . . . habeas corpus" as a "criminal action[]"). Indeed, the Tennessee Supreme Court specifically held that "habeas corpus appeals [are] to be made to the Court of Criminal [A]ppeals." *Tragle v. Burdette*, 222 Tenn. 531, 534, 438 S.W.2d 736, 737 (Tenn. 1969). Thus, even if we were to entertain the notion that the trial court's 2016 finding that Mr. Todd is subject to a disability invalidated his 1986 plea agreement, we simply have no jurisdiction to consider whether this fact entitled him to habeas corpus relief.

## II.

Mr. Todd next argues that the limited conservatorship serves as an unnecessarily rigorous application of his sentence, in violation of the Tennessee Constitution. Under Article 1, section 13 of the Tennessee Constitution, "no person arrested and confined in

jail shall be treated with unnecessary rigor." Very few Tennessee cases have interpreted the language in Article 1, section 13; no Tennessee cases have ever held that the prohibition against treatment of prisoners with "unnecessary rigor" is implicated in the context of a trial court's finding, by clear and convincing evidence, that a prisoner is in need of a limited conservatorship for healthcare decisions. In interpreting a similar provision in its state constitution, the Supreme Court of Oregon described the standard as follows:

> "Unnecessary rigor" is not to be equated only with beatings or other forms of brutality. . . . Since it is "unnecessary" rigor that is proscribed, the first question under this clause is whether a particular prison or police practice would be recognized as an abuse to the extent that it cannot be justified by necessity.

*Sterling v. Cupp*, 290 Or. 611, 620, 625 P.2d 123, 130 (Or. 1981).

Assuming arguendo that the imposition of a limited conservatorship is the type of practice that is governed by Article I, section 13, we cannot conclude that the practice was unnecessary in this case. As previously discussed, the trial court noted that it had before it "significant and overwhelming evidence" that a limited medical conservatorship was necessary in order to treat Mr. Todd's serious mental health issues. As such, it appears to this Court that whatever "rigor" may be attributed to the limited conservatorship, it was in no way unnecessary.

Mr. Todd argues, however, that this Court should nevertheless conclude that the forcible administration of medications in this case amounts to unnecessary rigor based upon the dissent in the United States Supreme Court's Opinion in *Washington v. Harper*, 494 U.S. 210, 110 S. Ct. 1028, 108 L. Ed. 2d 178 (1990) (Stevens, J., dissenting). In *Harper*, the inmate filed a civil rights action challenging a policy allowing the prison to administer psychotropic drugs without his consent and without a judicial hearing. *Id.* at 213–14. The inmate had previously consented to pharmaceutical treatment for his manic-depressive disorder but later refused to consent to treatment. *Id.* at 214. Pursuant to the prison's written policy, the inmate's treating physician sought to administer medications to the inmate despite his objections. Under the prison policy, an inmate may be treated without his or her consent where: (1) the inmate suffers from a mental disorder; (2) the inmate is gravely disabled or poses a likelihood of serious harm to himself, others, or property; (3) the inmate is given a hearing before a special committee, consisting of a psychiatrist, a psychologist, and the Associate Superintendent of the prison, which determines by a majority vote that the above two conditions have been met.[2] *Id.* at 215. The policy also outlined several procedural safeguards applicable to the hearing,

---

[2] The policy also required that the hearing board members not be involved in the inmate's treatment or diagnosis and that treatment would only be authorized if the psychiatrist voted with the majority. *Harper*, 494 U.S. at 215–16.

including but not limited to appropriate notice of the proceedings and diagnosis be received by the inmate and that the inmate may not be medicated at the time of the hearing. *Id.* at 216.

Despite the inmate's argument that the forced administration of pharmaceuticals violated his due process rights, the majority of the United States Supreme Court disagreed. Although the ***Harper*** Court agreed that the inmate "possesse[d] a significant liberty interest in avoiding the unwanted administration of antipsychotic drugs under the Due Process Clause of the Fourteenth Amendment," the Court ultimately held that the prison policy did not violate this right. *Id.* at 221–22. In reaching this decision, the Court noted that the prison had a strong interest in providing medical care to prison inmates and ensuring the safety of prison staff and inmates. *Id.* at 225. The Court also noted the policy's requirements that the inmate have a mental disorder, that the treatment in question only be ordered under the direction of a licensed psychiatrist, and that the treatment be in the inmate's medical interests. *Id.* at 226. Finally, the ***Harper*** majority noted that the procedure adopted by the prison was appropriate even without the requirement that the prison obtain court approval for the treatment, as the quasi-judicial hearing provided under the policy was sufficient to satisfy due process. *Id.* at 226–35.

In his partial dissent, Justice Stevens, joined by Justices Brennan and Marshall, disagreed that the prison policy at issue comported with due process. While the dissent did not disagree with the Court's general holding that "the substantive protections of the Due Process Clause limit the forced administration of psychotropic drugs to all but those inmates whose medical interests would be advanced by such treatment," the dissent concluded that the prison policy did not meet the standard set by the majority. *Id.* at 243 ("Even on the Court's terms, the Policy is constitutionally insufficient."). Instead, the dissent determined that the policy "does not require a determination that forced medication would advance his medical interest" and does not require the determination of whether forcible administration of medication be made "by an impartial person or tribunal." *Id.* at 250. The dissent therefore concluded that the above infirmities rendered the prison policy unconstitutional. *Id.* at 258.

Respectfully, Mr. Todd's argument is subject to several issues, any of which would be sufficient to defeat this argument. First, we note that the opinion in ***Harper*** did not concern either an unnecessary vigor prohibition or even the United States Constitution's prohibition on cruel and unusual punishment. Rather, the inmate in ***Harper*** argued that his liberty interest under the Due Process Clause was violated by the forced administration of psychotropic medications. Here, as previously discussed, Mr. Todd did not raise the alleged violation of his liberty interest as an issue on appeal but instead framed this issue under Article I, section 13 of the Tennessee Constitution. It is well settled that an issue is generally waived when it is argued in the body of the brief but not designated as an issue on appeal. *See, e.g.*, ***State v. Freeman***, 402 S.W.3d 643, 653 (Tenn. Ct. App. Oct. 16, 2012) (quoting ***Childress v. Union Realty Co.***, 97 S .W.3d 573,

578 (Tenn. Ct. App. 2002)) ("We consider an issue waived where it is argued in the brief but not designated as an issue."); ***Bunch v. Bunch***, 281 S.W.3d 406, 410 (Tenn. Ct. App. 2008). Additionally, Mr. Todd's argument rests on the holding of the dissenting Opinion in ***Harper***, which is not controlling on this Court. *See **In re Adoption of J.K.W.***, No. E2006-00906-COA-R3-PT, 2007 WL 161048, at *6 (Tenn. Ct. App. Jan. 23, 2007) ("While a dissenting opinion may, at some point in the future, become the law, a dissent is not, in and of itself, controlling authority."). Given that Mr. Todd's argument rests solely on a dissenting Opinion and neither the dissenting or majority Opinion in ***Harper*** address the constitutional provision raised by Mr. Todd in his statement of the issues, we cannot conclude that Mr. Todd has shown that the conservatorship granted in this case violates the Tennessee Constitution's prohibition against unnecessary rigor.

### III.

Mr. Todd next argues that the appointment of a conservator who may consent to the forcible administration of medications ordered by the trial court violates his freedom of religion under the United States Constitution based upon the United States Supreme Court case of ***Holt v. Hobbs***, 135 S. Ct. 853, 190 L. Ed. 2d 747 (2015); *see also* U.S. Const. amend. I ("Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; . . . ."). In ***Holt***, a Muslim prison inmate brought suit against the Arkansas Department of Correction ("the Department") challenging the Department's refusal to allow him to grow a half-inch beard in accordance with his religious beliefs. ***Holt***, 135 S. Ct. at 859. The inmate argued that the decision violated the "Religious Land Use and Institutionalized Persons Act of 2000 (RLUIPA), 114 Stat. 803, 42 U.S.C. § 2000cc et seq., which prohibits a state or local government from taking any action that substantially burdens the religious exercise of an institutionalized person unless the government demonstrates that the action constitutes the least restrictive means of furthering a compelling governmental interest." ***Id.*** (citing 42 U.S.C § 2000cc–1(a)) ("No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person—(1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest."). The ***Holt*** Court first concluded that the decision to deny the inmate the ability to grow a beard substantially burdened his sincerely held religion beliefs. ***Id.*** at 863. The Court agreed with the Department, however, that it had a compelling interest in stemming the flow of contraband into the prison. ***Id.*** Nonetheless, the ***Holt*** Court determined that the Department had not shown that forbidding short beards like the one sought by the inmate was "the least restrictive means of preventing the concealment of contraband." ***Id.*** at 864. The United States Supreme Court therefore ruled that the Department's grooming policy violated RLUIPA.

Mr. Todd does not dispute that TDOC has a compelling interest in the safekeeping of prison facilities or in providing healthcare to prison inmates. *See* Tenn. Code Ann. §§ 41-1-104(b), -204 (giving TDOC the responsibility for the "welfare, conduct and safekeeping of the inmates" in its custody, including the obligation to provide inmates with medical services). Analogously to **Holt**, however, Mr. Todd argues that the trial court's decision to appoint a limited conservator to consent to the forcible administration of pharmaceuticals violates the United States Constitution and RLUIPA. TDOC does not assert that Mr. Todd's opposition to medication does not constitute a sincerely held religious belief or that the forcible administration of medication would not substantially burden that belief. Accordingly, we need only consider whether the imposition of a limited conservatorship allowing forcible administration of medications in this case is the least restrictive means available for furthering TDOC's interest in prison safety and the provision of medical care to inmates.

Here, the trial court specifically held that Mr. Todd "require[s] medical treatment" because he refuses to accept "the reality of his health condition." The trial court characterized Mr. Todd's mental illness as "disabling." As such, the trial court ruled that a limited conservator was necessary because Mr. Todd "cannot give informed consent" for necessary "medical and mental examinations and treatment." Mr. Todd argues, however, that these findings are contrary to the evidence presented at trial that he was able to cooperate with the prison's treatment team during his incarceration and that he was stable while on parole in 2012. Mr. Todd asserts that this cooperation and stability show that removing his ability to consent to medical treatment is not the least restrictive means available to TDOC to accomplish its goals, given the debilitating effect of the psychotropic medication prescribed to Mr. Todd.

It is important to note that the record on appeal contains no transcript or statement of the evidence presented at the August 25, 2016 hearing. [omit] Generally, when the appellant fails to file a transcript or statement of the evidence, the appellate court presumes that the trial court's decision is supported by sufficient evidence. **Outdoor Mgmt., LLC v. Thomas**, 249 S.W.3d 368, 377 (Tenn. Ct. App. 2007). We concede that the trial court's order indeed reflects that Mr. Todd testified as to his purported stability and cooperation in previous years. [omit] In addition, the guardian ad litem's report supports Mr. Todd's testimony that he was stable during the period of time when he was not incarcerated.

The evidence in the record regarding Mr. Todd's stability during his present incarceration, however, paints a different picture of the state of Mr. Todd's current mental health. First, according to Dr. O'Toole's testimony, Mr. Todd substantially deteriorated prior to July 2016 and, at that time, refused to cooperate in his treatment. After refusing treatment, Mr. Todd's condition deteriorated in such a way that he apparently believed that Dr. O'Toole was a witch and intimated that he could kill her. Likewise, the guardian ad litem's report indicates that in the fall of 2015, Mr. Todd

experienced delusions, mania, lack of time reality, lack of hygiene, and "refusal of clothes, bedding, and food." Although Mr. Todd improved for a short period of time in the early months of 2016 when he was apparently cooperating in treatment, he soon began to refuse treatment and deteriorate. Clearly, this evidence shows that Mr. Todd is currently suffering from a mental illness and that he experiences significant mental health issues that are ameliorated by appropriate treatment.

Notwithstanding this evidence that Mr. Todd's mental health improved with treatment, counsel asserted at oral argument that the treatment offered to Mr. Todd is not the least restrictive means of treatment because it causes Mr. Todd to suffer from "muscle tremors, being [un]able to think, unable to digest." Due to the lack of a transcript, however, the record on appeal contains no evidence of the actual side effects experienced by Mr. Todd or that are likely to be experienced by Mr. Todd.

Finally, Dr. O'Toole assured the trial court that any treatment would be provided "using the lowest effective dose of any medication, and the least intrusive means of providing such treatment." In contrast, the trial court's order contains no evidence of a less intrusive method of serving TDOC's compelling interests other than the appointment of a limited conservator. Indeed, counsel for Mr. Todd conceded at oral argument that no proof was presented at trial as to alternative options available to TDOC to maintain safekeeping of its prison and Mr. Todd's health without the administration of psychotropic medication.

We, like the guardian ad litem, recognize that the evidence regarding Mr. Todd's need to be forcibly medicated is somewhat conflicting. While it does appear that Mr. Todd was able to manage his condition while not incarcerated, since his incarceration he has markedly declined to a point where, unmedicated, he suffers from delusions, lack of reality, lack of personal hygiene, and refuses food and other necessities. When medicated, however, Mr. Todd is "articulate" and cogent. Where the testimonial evidence on an issue is conflicting, the trial court's determination "rests in some degree upon its assessment of the relative credibility of the [witnesses], an assessment to which we must give deference." *In re Annia J.*, No. M2010-02236-COA-R3-JV, 2012 WL 113077, at *7 (Tenn. Ct. App. Jan. 11, 2012); *see also* **Wells v. Tenn. Bd. of Regents**, 9 S.W.3d 779, 783 (Tenn. 1999) ("Trial courts are in the most favorable position to resolve factual disputes hinging on credibility determinations. . . . Accordingly, appellate courts will not re-evaluate a trial judge's assessment of witness credibility absent clear and convincing evidence to the contrary."). Given (1) Dr. O'Toole's medical opinion that Mr. Todd is suffering from a mental disorder that prevents him from making his own healthcare decisions; (2) evidence in the guardian ad litem's report that Mr. Todd suffers from delusions and other mental health issues that are ameliorated when he is medicated; (3) the lack of any evidence in the record concerning a less restrictive alternative by which TDOC can further its compelling interest in the safekeeping of prisons and prisoners, and (4) the lack of a transcript or statement of the evidence from which this court could

independently review the evidence presented at trial, we cannot conclude that the trial court erred in finding that a limited conservatorship allowing forcible treatment in the event that the treatment serves Mr. Todd's needs was the least restrictive means of furthering TDOC's compelling interests in this case. Given our conclusion that the trial court's order was the least restrictive means of furthering TDOC's compelling interest, Mr. Todd's final issue is pretermitted.

## Conclusion

The judgment of the Probate Court of Davidson County is affirmed, and this matter is remanded to the trial court for all further proceedings as are necessary and are consistent with this Opinion. Costs of this appeal are taxed to the Appellant, George Todd, for which execution may issue if necessary.

_____
J.STEVEN STAFFORD, JUDGE