Hinds *v.* Buck *et al.*

(*Nashville*, December Term, 1940.)

Opinion filed May 17, 1941.

W. C. Smith, of Jamestown, for complainant.

Ward R. Case and Robt. F. Turner, both of Jamestown, for defendants.

Mr. Special Judge Frank T. Fancher delivered the opinion of the Court.

This petition for *certiorari* is to review the decree of the Court of Appeals affirming the decree of the chancellor, holding that Emma Hinds, widow of James Hinds, is entitled to homestead in fifty acres of land purchased by James Hinds, deceased, January 1, 1926. The land is valued at less than $1,000. At the time of the purchase by James Hinds, he had a wife and three children.

His wife, Emma Hinds, was then an inmate of the East Tennessee Hospital for the Insane and still remains there, a person hopelessly insane. The three children, living when the land was purchased, were then aged from nine to thirteen years.

Just before his death, James Hinds mortgaged the property to secure a $300 loan. Of course the wife did not join in the mortgage. After his death his children renewed the note and mortgage. This mortgage was foreclosed and the defendant, W. H. Buck, purchased the property at the sale. Buck brought suit against one of the daughters of James Hinds, who was in possession, and thereby acquired possession.

It is contended that the homestead does not exist because Emma Hinds is hopelessly insane and did not reside with her husband when he died.

The question is, Was he the head of a family when his wife was permanently located in the insane asylum? The Code, section 7719, plainly provides that the homestead can only be conveyed by joint deed of husband and wife, and upon the death of the husband, shall inure to the benefit of the widow and children of such head of the family.

It is said by petitioner that before there can be any right of homestead there must be a family. It is said the family did not exist because Mrs. Hinds was absent from

her husband and that the law is the same as if the wife had deserted the husband.

One does not have to reside on the homestead in Tennessee. By the Constitution, Article XI, section 11, and Code section 7719, the right exists if the head of the family owns or is possessed of the land. To be the head of a family of course there must be a family. If there is the relation of father and child or husband and wife, there is a family. Bouvier's Law Dictionary, Rawle's Third Revision, Vol. 1, p. 1427, citing *Bachman* v. *Crawford,* 22 Tenn. (3 Humph.), 213, 216, 39 Am. Dec., 163.

We think of the family as a domestic establishment or a fireside. But shall we deny the right of homestead because the wife cannot attend the family circle? She is still the wife, however insane. This right of homestead is a favorite of our courts. The right is broadly and liberally construed, according to the beneficent intention of this American institution, which was unknown to the lands from which we came.

The homestead, regardless of the enforced absence of the wife, if that were an obstacle, was acquired by Hinds when he bought the property because he then had his children with him. Even if they left the home and he alone remained, the homestead right, once acquired, remained with him. 26 Am. Jur., p. 126, section 203.

Absence from the husband by necessity, the confinement of the wife in the State institution for the insane, will not be an abandonment of the homestead. 26 Am. Jur., 121, section 195, 29 C. J., p. 939, 940.

The fact that the wife was insane and confined to the asylum after her husband's death does not in any way affect her homestead rights, once acquired. *Higgins* v. *Higgins,* 117 Ky. 725, 78 S. W. 1124, 25 Ky. Law Rep. 1824.

■ Undoubtedly there was a homestead at the death of James Hinds, though the children were of age when he died in the summer of 1938. The homestead inured to the benefit of his insane widow, unless her enforced absence prevented. The statute says it inures to the benefit of the widow and does not make any exception. Can we say her condition in the insane asylum will prevent her from receiving the benefit?

Such a view of the law is so cold as to cause a shudder. The homestead is for the protection of the family, including the widow, and to say that because she is insane and incapable of being in the home or in the family circle she is to be classed with the wife who has deserted her husband, will be to deprive one most entitled to its benefits without her volition. Such a conclusion is most unreasonable and unjust.

It is said the insane wife cannot use the home. The answer is, its income can be used for her though she be in the State institution. The State can use it for her. The chancellor appointed a receiver to take charge.

■ It is said here that the suit could only be brought by the State or the hospital for the insane, whose ward she is. There is no impediment of law to our entertaining the suit by her brother as next friend. She has no regular guardian, and the court is always the ultimate guardian of persons under disability who come under its care and protection.

The correct conclusion has been reached by the chancellor and the Court of Appeals.

Writ denied.