IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs April 29, 2010

# IN THE MATTER OF THE CONSERVATORSHIP OF DONALD E. TODD
## v. TONYA TODD JUSTICE

**Direct Appeal from the Chancery Court for Hamilton County**
**No. 09-G-095     W. Frank Brown, III , Chancellor**

---

**No. E2009-02346-COA-R3-CV - FILED JUNE 14, 2010**

---

This is a conservatorship case.  Appellee filed a petition to appoint a conservator for her father, the Appellant herein.  The trial court granted the petition, appointing co-conservators for Appellant, and charging fees and expenses to the Appellant's funds, pursuant to Tenn. Code Ann. § 34-1-114.  Appellant appeals.  Finding that the record is incomplete and, as such, does not support, by clear and convincing evidence, a finding that Appellant was in need of the court's assistance, and that the trial court failed to properly follow the statutory mandates required for appointment of a conservator, we vacate and remand.

**Tenn. R. App. P. 3. Appeal as of Right; Judgment of the Chancery Court Vacated and Remanded**

J. STEVEN STAFFORD, J., delivered the opinion of the Court, in which ALAN E. HIGHERS, P.J., W.S., and DAVID R. FARMER, J., joined.

Walter E. Grantham, Chattanooga, Tennessee, for the appellant, Donald E. Todd.

Alexander W. Gothard, Chattanooga, Tennessee, for the appellee, Tonya Todd Justice.

## OPINION

At the time of the hearing in this case, Appellant Donald E. Todd was seventy-four years old.  He is a retired electrical engineer and college professor.  Dr. Todd has one child, Appellee Tonya Todd Justice. Dr. Todd and Ms. Justice's mother divorced when Ms. Justice was a child. Since approximately 1981, Dr. Todd  and Ms. Judith Bean have been

companions.[1]  Dr. Todd suffers from Alzheimer's.  On July 13, 2009, Ms. Justice filed a petition for appointment of a conservator in the Chancery Court of Hamilton County. Therein, Ms. Justice asked the court to appoint her as immediate interim conservator for her father, pending a hearing and appointment of a permanent conservator.  Ms. Justice specifically averred that Dr. Todd was in need of a conservator because, among other things, Ms. Bean was exerting "undue influence in having or attempting to have [Dr. Todd] change his Will in her favor," and in seeking to have herself named as the sole beneficiary of Dr. Todd's retirement and bank accounts.  Ms. Justice asked that a guardian *ad litem* be appointed for her father.  Attached to her petition, Ms. Justice provided the September 10, 2007 evaluation report of Dr. Todd's physician, Dr. Robert A. Catanese, and the July 1, 2009 examination report of Dr. Walter D. Parkhurst. Dr. Parkhurst confirmed Dr. Todd's Alzheimer's diagnosis and indicated that the prognosis was "one of gradual, progressive decline."  In addition to confirming the Alzheimer's diagnosis, Dr. Catanese indicated that Dr. Todd's short term memory was most affected by his disease. Dr. Catanese also noted that Dr. Todd suffers from chronic asthma.

By Order of July 13, 2009, the trial court appointed a guardian *ad litem* for Dr. Todd, and authorized Ms. Justice to investigate Dr. Todd's assets.  Also on July 13, 2009, the trial court entered a temporary restraining order, which indicates, in pertinent part, that:

> [Dr. Todd's] long time caregiver and girlfriend, Judith T. Bean...walked out on Friday, July 10, 2009, and has disappeared, but that before disappearing she had taken numerous actions which might have resulted in undue influence of [Dr. Todd] and she allegedly took other actions with respect to [Dr. Todd's] property and assets  inconsistent with [Dr. Todd's] desires and best interests; therefore, there appears to be good cause for concern about Judith T. Bean's access to and control over [Dr. Todd's] property.

Based upon this finding, the court restrained and enjoined Ms. Bean from access to, and actions concerning, Dr. Todd's property, assets and investments.  The court also appointed Ms. Justice as her father's interim conservator, and authorized her to protect, marshal and secure Dr. Todd's property, assets and investments. Interim Letters of Conservatorship were entered in favor of Ms. Justice, which letters were to expire on July 24, 2009.

---

[1]  There is some confusion in the record as to whether Ms. Bean and Dr. Todd were married.  The answer to this question, however, is not essential to the disposition of this case.

Dr. Todd obtained counsel and, on July 15, 2009, filed a motion to rescind both the temporary restraining order, and the order appointing Ms. Justice interim conservator. Following a hearing on the motion, the court entered an Order on July 22, 2009, which continued the restraining order against Ms. Bean, but revoked its previous appointment of Ms. Justice as the interim conservator for her father. Because Dr. Todd had obtained his own counsel, the court also relieved the guardian *ad litem* of further duties, except for the filing of a written report. This report was filed on July 22, 2009, along with an affidavit of fees.

An evidentiary hearing began on July 24, 2009. The transcript of the July 24, 2009 hearing indicates that only Dr. Todd's long time attorney, John Buhran, and the guardian *ad litem* testified before the parties decided to confer among themselves. After doing so, the parties announced to the court an agreement. Specifically, the transcript provides, in relevant part:

> THE COURT: Is there an announcement?
>
> MR. PIERCE [Counsel for Ms. Justice]: Yes, Your Honor, there is. I think we've come to some conclusions that we can live with, I think.... I think what we're talking about is the freeze on the assets and the beneficiary designations, that type of thing, that we discussed; but leave the money as it is, not put it with any institution or whatever and continue with Ms. Bean and Ms. Justice and, of course, Dr. Todd having the passwords and having access and having the monthly statements and reports like they've been having them for a number of years and that everybody is comfortable with, just the freeze is in place. And that, of course, bills and regular normal ordinary reasonable expenses would be paid, things that are within normalcy for Dr. Todd and how he lives.
>
> And then we had talked about having cohealthcare agents being Ms. Bean and–I don't have that name–that Verble–you've met Ms. Sally Brewer and Mr. Mike Verble. What's the name of the whole thing?
>
> MR. GOTHARD [co-counsel for Ms. Justice]: Verble Estate Preservation.
>
> MR. PIERCE: Verble Estate Preservation and Advisors LLC be the cohealthcare agent, and then the two cohealthcare agents

would get together to agree as to who would be available at given times and provide services and oversight on medications and care.

We also talked about having Dr. Todd's brother, Dr. Gene Todd, do a bit of an inventory about weapons in the house, because we believe some may or may not be locked away, and also there's a safe in the house, and do an inventory of that. Let the brother do that while he's here, if he would. And we believe he would be agreeable to doing that. And I believe that's pretty much it. We didn't really have a chance to discuss–although it came up right as we were breaking up–about cost in this matter and whether–how those would be handled.

THE COURT: Are you talking about clerk's cost or attorney's fees?

MR. PIERCE: Attorney's fees. Reasonable petition, we believe.

MR. GRANTHAM [counsel for Dr. Todd]: We would object to that. The only other thing is on the freeze on the assets, we had talked about except by Court order–

MR. PIERCE: Yes, that's true.

MR. GRANTHAM: –on the three days notice–the idea being if there's a change in the market that's that quick, counsel for the petitioner and the respondent should be able to submit an agreement, otherwise the Court can hear it.

MR. PIERCE: We talked about that and I think we agreed to go with the court order, you know, even in equitable matters. I mean, sometimes you get to the court a little more quickly than others. I don't think that will be a problem to get them back to the court.

MR. GRANTHAM: And the situation would go back to where...Dr. Todd, Ms. Bean and Ms. Justice will get information from the institution in which there are investments, and that will be confidential information that won't be given to third parties

-4-

except maybe counsel as needed for this proceeding.

THE COURT: Okay.  So we have the issue of fees and clerk's cost.  That's still up in the air right now.

MR. PIERCE: Right.

THE COURT: Is counsel satisfied with everything else that's generally covered right now.

MR. ATCHLEY [counsel for Ms. Bean]: Yes, Your Honor, and I believe, basically, everybody sees this as an interim order.

MR. PIERCE: Yes.

MR. GRANTHAM: That's it, Your Honor.

The parties each provided the court with a proposed order; although the court adopted Dr. Todd's proposed order, the court modified the proposed order.  In addition to the following, the trial court specifically incorporated the portion of the transcript set out above.  The Order was entered on August 27, 2009, and provides, in pertinent part, as follows:

1.  Pending further order of the Court, Donald E. Todd, Tonya Todd Justice, and Judith T. Bean shall have passwords and other means of access to information (status, activity, balance, and beneficiary designation) concerning each investment and asset of Donald E. Todd for the purpose of preparation of monthly reports, accounting and/or tax purposes.  No information obtained hereunder by Tonya Todd Justice or Judith T. Bean shall be disclosed to anyone other than Donald E. Todd or counsel for a party hereto, *for use in this case*.

2.  Donald E. Todd shall not sell, purchase, or change *[the words "benificiary or" were deleted]* any investment or asset except upon three (3) days notice to all parties and the Court*'s approval, or all parties' approval, and not change ownership or beneficiary on any asset without court permission.*

3.  Donald E. Todd shall have access to his income (and to the extent necessary, the principal from investments), and he may

-5-

expend the same for his ordinary and reasonable living expenses, expressly including travel expenses.

4.  Judith T. Bean shall carry out her duties as his healthcare attorney-in-fact pursuant to the existing power of attorney executed by Donald E. Todd.  Verble Estate Preservation and Advisors, LLC will serve as co-healthagent with Ms. Bean, and they are to confer and reach agreement with her as to who will be available at given times and who will provide services and oversight of medications and medical care, with each having authority to act for Dr. Todd when presented with him.

*5.  **The Court accepts the parties' agreement as such represented the least restrictive alternatives upon Donald E. Todd that are consistent with the protection of Dr. Todd and his property.***

*6.* Dr. Gene Todd shall make and provide an inventory of the weapons in the residence and the contents of the home safe.

*7.  **The Court finds Donald E. Todd to be partially disabled and that Dr. Todd is in need of assistance from the court.***

*8.* Court costs are taxed to ***[the words "Petitioner Tonya Todd Justice" were deleted] the funds of Donald E. Todd***, for which execution may issue, if necessary.  ***This matter is closed pending further proceedings.***

(The bold and italicized sections represent changes made to the proposed order by the trial court).

On August 27, 2009, but before entry of the foregoing order, Dr. Todd and Ms. Bean filed a motion objecting to the order.  Dr. Todd and Ms. Bean asked the court to alter or amend the oral agreement made by the parties at the July 24, 2009 hearing.  In relevant part, Dr. Todd and Ms. Bean averred that: (1) Ms. Justice and/or her counsel had already made some type of agreement with the Verble firm prior to July 20, 2009, (2) Sally Brewer (a Verble agent) had indicated that all future medications would be given by Verble (which was an alleged violation of the court's order), and that, based upon the foregoing, Verble should be removed as co-healthcare agent for Dr. Todd.

After the August 27, 2009 order providing for a conservator was entered, several other motions were filed. On September 8, 2009, the guardian *ad litem* filed a motion to approve her fees, along with her affidavit and other supporting documentation, outlining some $2,062.50 in fees. On September 29, 2009, Mr. Pierce, initial counsel for Ms. Justice, filed a motion for his costs and fees, along with his affidavit, and supporting documentation, outlining $24,625.00 in fees.[2] On October 8, 2009, Dr. Todd filed an objection to the requested fees and costs. Therein, he objects to the payment of these costs and fees, specifically arguing that:

> [Dr. Todd] relies upon T.C.A. § 34-1-114 which expressly provides for taxation of court costs and fees of the attorney for the petitioner and the guardian ad litem against the funds [Dr. Todd] only when a fiduciary is appointed, and T.C.A. § 34-1-101(8) provides that for Chapters 1-2 of Title 34 of the Tennessee Code Annotated "fiduciary" means a conservator. In the case before the Court no conservator was appointed.

> [Dr. Todd] further relies upon T.C.A. § 34-1-107(a) for objection to the taxation of the guardian ad litem's fee against his funds. Adversary counsel entered notice of appearance July 15, 2009 with notice to [Ms. Justice's] attorney and to the guardian ad litem. Time spent and services rendered by [the guardian ad litem] after her receipt of notice that [Dr. Todd] was represented by adversary counsel were unnecessary and should not be taxed against [Dr. Todd's] funds.

> At the July 24, 2009 hearing in this cause, the agreement of the parties was announced, and [Ms. Justice's] attorney expressly stated there was no agreement for taxation of costs and fees. The announced agreement was intended to provide for Verble Estate Protection to assist Ms. Bean as [Dr. Todd's] healthcare attorney in fact and to provide that [Dr. Todd] would make no change in his investments except by agreed order, or upon three days' notice to all parties. Except for the provision relating to change of investments, the parties agreed to keep in place the arrangements established by [Dr. Todd] well before the initiation of this action.

---

[2]Mr. Pierce's motion to withdraw as counsel was granted on September 21, 2009.

T.C.A. § 34-6-204(a)(1) provides that unless the Court finds by clear and convincing evidence that the attorney in fact under the durable power of attorney for health care is acting on behalf of the principal in bad faith, the attorney in fact has priority over all others to act for the principal in all matters of health care decisions, and even a conservator cannot revoke or amend the durable power of attorney for health care nor replace the designated attorney in fact. [Ms. Justice], through counsel, acknowledged that [Dr. Todd's] health care needs were being properly met and offered no evidence of any bad faith exercise of [Dr. Todd's] health care power of attorney or any good cause for the revocation of that power.

*        *        *

There has been no evidence offered that [Dr. Todd's] property requires protection of the Court. Historically, [Dr. Todd] has made only infrequent investment changes. At the July 24, 2009 hearing, [Dr. Todd] agreed that, except by agreed order, or upon three days' notice to all parties, he would make no change in his investments, and he would not change the beneficiary of any investment. Except for said agreement, the Court's order entered August 27, 2009 was to simply keep in place an arrangement that [Dr. Todd] had established well before the initiation of this action.

*        *        *

With regard to the requested fee of petitioner's attorney, [Dr. Todd] not only objects to its taxation against his funds, but strenuously objects to the amount requested as grossly excessive.

In response to Dr. Todd's filing, Mr. Pierce filed a response on October 8, 2009, wherein he argued that, based upon the court's finding that Dr. Todd "is partially disabled and in need of assistance of the Court pursuant to T.C.A. §34-1-126," Dr. Todd became a "[w]ard of the Court," and that a conservator, pursuant to Tenn. Code Ann. §32-1-101(4), "either was appointed...or would have been appointed pursuant to T.C.A. §34-1-114(a) **but for** the fact that the parties entered into and the Court approved a compromise pursuant to T.C.A. § 34-1-121." (Emphasis in original). Mr. Pierce also defended the amount of the

requested fees. On October 9, 2009, Ms. Justice also filed a response to Dr. Todd's objection, arguing that Ms. Bean, Verble Estate Preservation and Advisors, LLC ["Verble"], and Ms. Justice had all been appointed co-conservators for Dr. Todd; consequently, Ms. Justice argued that fees were properly payable from Dr. Todd's funds.

All pending motions were heard by the court; however, there is no transcript of this hearing in the record. On October 12, 2009, the court entered an order. Concerning the question of whether the trial court, in fact, appointed a conservator for Dr. Todd, the court states in its October 12, 2009 order:

> Upon first glance, it is easy to understand the position of Dr. Todd. Technically, the [August 27, 2009] Order does not appoint a "conservator" by name or title. However, if we examine the substance of the Order, something different appears. The court designated/appointed Verble to be the "co-healthcare agent" with Ms. Bean...." Dr. Todd had named Ms. Bean to be his attorney-in-fact and agent for him pursuant to the terms of a healthcare power of attorney he signed. The court cannot appoint a co-attorney-in-fact. However, the court can appoint a limited conservator of the person of Dr. Todd. The court did so by the substance of the Order. [Counsel for Ms. Justice] makes this point in his Response [to the motions for payment of fees] and refers to the definition set forth in Tenn. Code Ann. §34-1-101(4):

> (4) "Conservator" or "coconservator" means a person or persons appointed by the court to provide partial or full supervision, protection and assistance of the person or property, or both, of a disabled person:

> Counsel for Dr. Todd is correct that the court does not remove an attorney in fact unless bad faith or good cause is found for such removal. There were allegations made, which if proved, could have resulted in the removal of Ms. Bean as attorney in fact of Dr. Todd's healthcare. The "settlement" prevented additional evidence, pro or con, on this subject matter, from being introduced.

> \*                        \*                        \*

[T]he Petition [to appoint a conservator for the person of Dr. Todd] was granted in part and [] the court did appoint Verble to be (co)limited conservator of Dr. Todd's healthcare, even though the term "conservator" was not used. The duties assigned to Verble meet the definition of a conservator.

*                              *                              *

Thus, when one looks at the substance of the Order, a very limited conservatorship was instituted and imposed.

Pursuant to Tenn. Code Ann. §34-1-114(a) and having clarified that it did, in fact, appoint a conservator, the trial court went on, in its October 12, 2009 Order, to award guardian *ad litem* fees of $2,062.50 to be paid from Dr. Todd's funds. The court also awarded Mr. Pierce fees of $6,700.00 from Dr. Todd's funds, with Ms. Justice being responsible for the balance of Mr. Pierce's fees.

On November 10, 2009, Dr. Todd filed an objection to the trial court's October 12, 2009 order, on grounds that he was not "afforded a hearing on the motion[s]." Dr. Todd's objection was denied by order of November 18, 2009. He appeals and raises four issues for review as stated in his brief:

1. Did the trial court, after accepting the compromise of the parties, abuse its discretion by expanding that compromise beyond the parties' agreement and beyond the evidence presented to the Court?

2. Did the court err in finding that Donald E. Todd was a "disabled person" as defined in Tennessee Code Annotated § 34-1-101(7)?

3. Is the designation of a "co-healthcare agent" the same as a conservator under Tennessee Code Annotated § 34-1-101(4)?

4. Did the court err in taxing costs and filing fees, guardian ad litem fees, and petitioner's attorney fees against the respondent?

It is a well settled that a trial court speaks through its orders. ***Palmer v. Palmer***, 562 S.W.2d 833, 837 (Tenn. Ct. App.1997). As set out in full context above, in its October 12, 2009 order, the trial court specifically stated that "a very limited conservatorship was

instituted and imposed" in this case; thus, by the plain language of its order, the trial court settled the question raised by Dr. Todd in his October 8, 2009 objection to the requested guardian *ad litem* and attorney's fees concerning whether the court, in fact, appointed a conservator or merely appointed a healthcare agent for Dr. Todd. Because the court specifically states that it imposed a conservatorship, we will apply the law applicable to conservators and their wards.

A "conservator" or "co-conservator" is "a person or persons appointed by the court to provide partial or full supervision, protection and assistance of the person or property, or both, of a disabled person." Tenn. Code Ann. § 34-1-101(4). This Court has described the role of a conservator as follows:

> A conservator occupies a fiduciary position of trust of the highest and most sacred character. ***Grahl v. Davis***, 971 S.W.2d 373, 377 (Tenn.1998) (citing ***Meloy v. Nashville Trust Co.***, 177 Tenn. 340, 149 S.W.2d 73 (1941)). Although the conservator plays a most important fiduciary role, it is significant to note that "the court itself is ultimately responsible for the disabled persons who come under its care and protection."

***In re Conservatorship of Clayton***, 914 S.W.2d 84, 90 (Tenn. Ct. App.1995) (citing ***Hinds v. Buck***, 177 Tenn. 444, 150 S.W.2d 1071, 1072 (1941); ***In re Ellis***, 822 S.W.2d 602, 607 (Tenn. Ct. App.1991)). (footnote omitted). Consequently, the authority, rights and responsibilities of a conservator are not independent of the court. "Conservators act as the court's agent and are under the court's supervision." ***Clayton***, 914 S.W.2d at 90. The courts appointing conservators "retain continuing control over guardians and conservators because the persons who accept these appointments become 'quasi-officials' [ ] of the court appointing them." ***Clayton***, 914 S.W.2d at 92 (citing ***Logan v. Graper***, 155 Tenn. 565, 4 S.W.2d 955, 956 (1927)). Because a conservator is, in essence, the agent through whom the court manages the affairs of a ward, the right to choose its representatives is important to the tribunal. ***Monteverde v. Christie***, 134 S.W.2d 905, 910 (Tenn. 1939).

"Because of the value our society places on individual autonomy and self-determination, persons seeking the appointment of a conservator must [first] prove by clear and convincing evidence that the person for whom a conservator is sought is a 'disabled person.'" ***In re Conservatorship of Groves***, 109 S.W.3d 317, 330 (Tenn. Ct. App. 2003) (quoting Tenn. Code Ann. § 34-1-126). Specifically, Tenn. Code Ann. §34-1-126 provides that "[t]he court must find by clear and convincing evidence that the respondent is fully or partially disabled and that the respondent is in need of assistance from the court before a

fiduciary can be appointed."[3] Clear and convincing evidence is evidence that "eliminates all serious or substantial doubt concerning the correctness of the conclusions to be drawn from the evidence. Evidence satisfying this standard will produce in the fact-finder's mind a firm belief or conviction regarding the truth of the factual propositions sought to be established by the evidence." *In re Groves*, 109 S.W.3d at 330. (citations omitted). As explained by this Court in *In re Conservatorship of Groves*:

> As the law now stands, the threshold question in every conservatorship proceeding is whether the person for whom a conservator is sought is disabled or incapacitated. If the answer is no, the trial court cannot appoint a conservator. If, however, the answer is yes, the court must then determine whether the person is fully or partially incapacitated and whether the incapacity is temporary or permanent. The trial court must also determine, based on the nature of the incapacity, whether the disabled person requires full-time supervision, protection, or assistance or whether partial supervision, protection, or assistance will suffice.

*In re Conservatorship of Groves*, 109 S.W.3d at 330 (footnote omitted).

Once the petitioner proves, by clear and convincing evidence, that the person for whom the conservatorship is sought is fully or partially disabled, and that the person is in need of assistance from the court, the designation of a particular person to serve as a conservator is left "'to the discretion of the appointing court, and an appellate court will interfere with the exercise of this discretion only in case of a clear abuse.'" *Estate of H.C. Powers v. Rogers*, No. 02-A-01-9310-CH-00227, 1994 WL 695419, at *4 (Tenn. Ct. App.

---

[3] The term "fiduciary" refers to "a guardian, co-guardian, conservator or co-conservator." Tenn. Code Ann. § 34-1-101(8).

The term "disabled person" is defined as:

> [A]ny person eighteen (18) years of age or older determined by the court to be in need of partial or full supervision, protection and assistance by reason of mental illness, physical illness or injury, developmental disability or other mental or physical incapacity.

Tenn. Code Ann. § 34-1-101(7).

Dec. 13 1994) (quoting *In re Rockwell*, 673 S.W.2d 512, 516 (Tenn. Ct. App.1983)).[4] Under Tenn. Code Ann. § 34-3-103, in order to appoint a conservator, the trial court must make two determinations: (1) what is in the best interest of the disabled person, considering all relevant facts; and (2) who, under the prioritized list, is the appropriate conservator. *Crumley*, 1997 WL 691532, at *3. Once the court determines that the best interest of the respondent would be met by appointment of a conservator, then the court must make a determination as to the person or entity that will best serve as conservator. Because we favor autonomy of the individual to decide his or her affairs, in reaching a decision to appoint a conservator, the court is statutorily mandated to impose the least restrictive alternative:

> The court has an affirmative duty to ascertain and impose the least restrictive alternatives upon the disabled person that are consistent with adequate protection of the disabled person and the disabled person's property.

Tenn. Code Ann. § 34-1-127.

Consequently, "a petition for the appointment of a conservator requires the lower court to make legal, factual, and discretionary determinations[,]" each of which requires a different standard of review. *Crumley v. Perdue*, No. 01-A-01-9704-CH00168, 1997 WL 691532, at *2 (Tenn. Ct. App. Nov.7, 1997). On appeal, a trial court's factual findings are presumed to be correct, and we will not overturn those factual findings unless the evidence preponderates against them. Tenn. R. App. P. 13(d) (2008); *Bogan v. Bogan*, 60 S.W.3d 721, 727 (Tenn.2001). For the evidence to preponderate against a trial court's finding of fact, it must support another finding of fact with greater convincing effect. *Watson v. Watson*, 196

_____

[4]Tenn. Code Ann. § 34-13-103 provides a hierarchy of persons to be considered for the role of conservator, to wit:

> Subject to the court's determination of what is in the best interests of the disabled person, the court shall consider the following persons in the order listed for appointment of the conservator:
>
> (1) The person or persons designated in a writing signed by the alleged disabled person;
> (2) The spouse of the disabled person;
> (3) Any child of the disabled person;
> (4) Closest relative or relatives of the disabled person; and
> (5) Other person or persons.

Tenn. Code Ann. § 34-13-103. "The best interest analysis and the fifth choice provides the court with some discretion." *Crumley*, 1997 WL 691532, at *2.

-13-

S.W.3d 695, 701 (Tenn. Ct. App.2005) (citing *Walker v. Sidney Gilreath & Assocs.*, 40 S.W.3d 66, 71 (Tenn. Ct. App.2000); *The Realty Shop, Inc. v. RR Westminster Holding, Inc.*, 7 S.W.3d 581, 596 (Tenn. Ct. App.1999)). We review a trial court's conclusions of law under a *de novo* standard upon the record with no presumption of correctness. *Union Carbide Corp. v. Huddleston*, 854 S.W.2d 87, 91 (Tenn.1993) (citing *Estate of Adkins v. White Consol. Indus., Inc.*, 788 S.W.2d 815, 817 (Tenn. Ct. App.1989)). We review discretionary determinations under an abuse of discretion standard. *Crumley*, 1997 WL 691532, at *2. A trial court abuses its discretion when it has applied an incorrect legal standard or has reached a decision which is against logic or reasoning that caused an injustice to the party complaining. *Eldridge v. Eldridge*, 42 S.W.3d 82, 85 (Tenn. 2001).

Only after the foregoing mandates have been satisfied may a court enter an order appointing a conservator. That order must:

> (1) Name the conservator or conservators and, in the court's discretion, a standby conservator or conservators;
> (2) Enumerate the powers removed from the respondent and vested in the conservator. To the extent not specifically removed, the respondent retains and shall exercise all powers of a person who has not been found to be a disabled person;

Tenn. Code Ann. § 34-3-107(1) and (2).

In cases where a conservator is appointed, the court may order costs to be paid from the ward's funds, as follows:

> (a) If a fiduciary is appointed, the costs of the proceedings, which are the court costs, the guardian ad litem fee, the required medical examination costs and the attorney's fee for the petitioner, shall be charged against the property of the respondent to the extent the respondent's property exceeds the supplemental security income eligibility limit. If no fiduciary is appointed, the costs of the proceedings shall be charged against the petitioner. The guardian ad litem fee and the attorney's fee for the petitioner shall be established by the court. If a fiduciary is cited for failure to file an inventory or accounting, the costs incurred in citing the fiduciary, in the discretion of the court, may be charged to and collected from the cited fiduciary.

Tenn. Code Ann. § 34-1-114(a).

-14-

Throughout all of these proceedings, Dr. Todd has the following rights:

> (1) On demand by respondent or the guardian ad litem, a hearing on the issue of disability;
> (2) Present evidence and confront and cross-examine witnesses;
> (3) Appeal the final decision on the petition;
> (4) Attend any hearing; and
> (5) Have an attorney ad litem appointed to advocate the interests of the respondent.

Tenn. Code Ann. § 34-3-106.

Following our review of the record, and in light of the foregoing analysis, the problems with this case are myriad. After consideration, it appears that the various problems with the case stem from two omissions: (1) the record was not properly developed and is, therefore, incomplete, and (2) the trial court failed to follow the legal tenets discussed above. Before delving into these omissions, we will first discuss the parties alleged agreement.

## **Agreement**

After conferring at the July 24, 2009 hearing, the parties announced to the court that they had reached an agreement. The parties' announcement is set out in full above. Although the parties' purported to agree concerning the appointment of Verble, and Ms. Bean as co-healthcare agents for Dr. Todd, as noted above, before the trial court entered its August 27, 2009 order on the agreement, Dr. Todd and Ms. Bean filed a motion, objecting to the agreement and asking the court to alter or amend the oral agreement announced by the parties at the July 24, 2009 hearing.

Concerning the alleged agreement between the parties that was announced at the July 24, 2009 hearing, the trial court stated, in its October 12, 2009 order, that:

> The court knew problems lay on the horizon because one of the attorneys asked, after the agreement was announced and accepted, about payment of the fees. Because the parties had neither discussed, nor agreed upon the issue of who was responsible for the payment of the attorney's fees, that matter was deferred until a formal request was made or the parties could agree upon such. The second indication of future problems was shown by the inability of the parties to agree upon the terms of the Order to be entered. The court received two

-15-

proposed orders. Third, since the court entered an Order on August 27, 2009, the parties have accused the others of violating the terms of the Order. Indeed, Dr. Todd and Ms. Bean filed a Motion on August 27, 2009, 21 minutes before the Order was filed....

Because "the court itself is ultimately responsible for the disabled persons who come under its care and protection," *Hinds v. Buck*, 177 Tenn. 444, 150 S.W.2d 1071, 1072 (1941), the authority, rights and responsibilities of a conservator are not independent of the court. *See, e.g., Clayton*, 914 S.W.2d at 90. Consequently, the appointment of a conservator is "[s]ubject to the court's determination of what is in the best interests of the disabled person." Tenn. Code Ann. § 34-13-103. "Persons do not attain the office of conservator by contract or family relationship." *AmSouth Bank v. Cunningham*, 253 S.W.3d, at 642. Rather, "[t]hey are appointed to act in the best interests of the disabled adult person for whom they are partially or fully responsible in the discretion of the court." *Id.*

Given the important nature of conservatorship actions, and given the grave risk of unnecessarily removing a person's autonomy, we hold, as a matter of law, that a court may not avoid its statutory obligation, to determine what is in the disabled person's best interest, by deferring to the agreement of the parties. This is not to say that parties may not confer and present an agreement to the court; however, the court must make an independent best interest determination before approving that agreement. From a review of the record, this did not happen in the present case.

As discussed above, no agreement was reached in this case because Dr. Todd and Ms. Bean both withdrew their consent prior to entry of the August 27, 2009 order; however, even if the parties had actually reached an agreement, the court would still have to indicate that it had made a best interest inquiry. Neither the August 27, 2009 order, nor the October 12, 2009 order contain the words "best interest." On the face of these orders, therefore, it would appear that the trial court failed to consider Dr. Todd's best interests in this case. Even from the substance of those orders, we are unable to infer that the court made a best interest inquiry. The best interest analysis not only includes the question of whether a conservator is needed, but it also includes the question of who should be appointed to serve in that role. Tenn. Code Ann. § 34-13-103. Here, the trial court appointed Verble, and Ms. Bean to be co-conservators. The court made this decision despite its statement, in the October 9, 2009 order, that "[t]here were allegations made, which if proved, could have resulted in the removal of Ms. Bean as attorney in fact of Dr. Todd's healthcare. The "settlement" prevented additional evidence, pro and con, on this subject matter, from being introduced." Without addressing the question of whether the trial court had the authority to remove Ms. Bean as Dr. Todd's attorney-in-fact for healthcare, the question of whether Ms. Bean was

-16-

acting in Dr. Todd's best interest is absolutely necessary to the question of whether she should be a conservator in this case. As discussed in 32 Am Jur. 2d <u>Guardian and Ward</u> §39 (2010):

> [T]he rationale behind guardianship and conservatorship proceedings is to promote the best interests of the incapacitated person... The best interests of the ward should be the decisive factor in making any guardianship choice on his or her behalf. Even though there may be a statutory preference of appointment accorded to blood relatives with respect to the guardianship or conservatorship of an incapacitated adult, the best interest of the incapacitated person is ordinarily the overriding, or paramount consideration. Thus, a statutory preference will not be recognized if the appointment of the next of kin would be affirmatively contrary to the best interests of the incompetent or his or her estate by being deleterious thereto in some significant way. Even in the absence of a statutory preference, the best interests and welfare of the incapacitated person must control...

(Footnotes omitted).

The trial court is correct that the record is not developed in the area of whether Dr. Todd's best interest would be served by appointment of Ms. Bean (or, in fact, Ms. Justice and/or Verble) as his conservator. Based upon our holding that a court cannot defer its best interest analysis to the agreement of the parties, the trial court should have required further evidence regarding the potential conservators in order to determine whether each has Dr. Todd's best interest as their goal. In the absence of this evidence, the trial court could not make a determination as to Dr. Todd's best interests as statutorily required.

Despite the acknowledged problems with the parties' alleged agreement, the trial court nonetheless proceeded to enter an order, attempting to memorialize that agreement. Based upon the foregoing law, when Dr. Todd and Ms. Bean filed their objection to the trial court's order (before that order was entered), the trial court should not have entered the order, but instead should have continued with the evidentiary hearing. The question of whether the court erred in modifying the proposed order is rendered moot by our finding that the order should never have been entered. In short, the trial court should have refrained from entering this order in favor of re-opening the proof. The fact that this was not done results in an incomplete record.

**Incomplete Record**

In order for the trial court to appoint a conservator, the petitioner must first prove, by clear and convincing evidence: (1) that the person for whom the conservatorship is sought is fully or partially disabled and (2) that the person is in need of assistance from the court. Tenn. Code Ann. §34-1-126. In order to meet this burden of proof, the petitioner may provide the court with the report of the respondent's physician. However, the report must comply with certain criteria set out at Tenn. Code Ann. § 34-3-105:

> (a) If the respondent has been examined by a physician or, where appropriate, a psychologist not more than ninety (90) days prior to the filing of the petition and the examination is pertinent, the report of the examination shall be submitted with the petition.... The physician or psychologist, on completing the examination, shall send a sworn written report to the court with copies to the petitioner and the guardian ad litem. The physician's or psychologist's report shall be made a part of the court record.
>
> *                              *                              *
>
> (c) Each physician's or psychologist's sworn report shall contain the following:
>
> (1) The respondent's medical history;
> (2) A description of the nature and type of the respondent's disability;
> (3) An opinion as to whether a conservator is needed and the type and scope of the conservator with specific statement of the reasons for the recommendation of conservatorship; and
> (4) Any other matters as the court deems necessary or advisable.

Here, Ms. Justice attached to her petition the examination reports of Dr. Walter Parkhurst and Dr. Robert Catanese. However, after review, it appears that only Dr. Parkhurst's report complies with Tenn. Code Ann. §34-3-105. Ms. Justice's petition was filed on July 13, 2009. On his report, Dr. Catanese indicates that the dates of consultation were August 23, 2007 and November 7, 2007. Consequently, Dr. Catanese's report should not have been considered as it involves examinations conducted beyond the ninety days prior to the filing of the petition.

Turning to Dr. Parkhurst's report, he lists Dr. Todd's diagnosis as Alzheimer's disease, with a prognosis of "gradual, progressive decline." Based upon these conclusions,

Dr. Parkhurst opined that Dr. Todd was disabled and in need of supervision for both his personal and financial matters, and specifically noted that Dr. Todd "requires supervised medication administration."

In addition to Dr. Parkhurst's report, the trial court heard some evidence at the July 24, 2009 hearing. However, the presentation of evidence was suspended when the parties announced their "agreement." The only testimony heard on July 24, 2009 was that of Dr. Todd's long-time attorney, John Buhran, and that of the guardian *ad litem*, Mollie Corn.

In relevant part, Mr. Buhran testified that Dr. Todd had come to his office to execute a springing power of attorney, naming Ms. Justice as his attorney-in-fact. Mr. Buhran further testified that he had noticed cognitive changes in Dr. Todd when Dr. Todd visited Mr. Buhran's office approximately one month prior to the hearing. Mr. Buhran also referred to other documents that Dr. Todd had executed in relation to his estate planning. On cross-examination, Dr. Todd's counsel asked Mr. Buhran to elaborate concerning the nature of these documents. When Mr. Buhran could not recall the specific documents, the court suspended his testimony so that Mr. Buhran could procure Dr. Todd's file from his office. Ultimately, due to the parties' alleged agreement, no further testimony from Mr. Buhran was presented.

From the trial court's October 9, 2009 order, it appears that Dr. Todd had executed a healthcare power-of-attorney in favor of Ms. Bean. However, the transcript contained in the record does not address the healthcare power-of-attorney, nor is the document included in the appellate record. Consequently, this Court cannot review whether this power-of-attorney is valid, or whether it exists at all.

In relevant part, Ms. Corn testified that, when she visited Dr. Todd at his home, he appeared very agitated, and that he was specifically angry with Ms. Justice for bringing the petition. Ms. Corn indicated that Dr. Todd made it "very, very clear that he was vehemently opposed to this conservatorship."

The foregoing comprises the bulk of the material evidence adduced in this case. In accordance with the statutory scheme, in order to have properly appointed a conservator for Dr. Todd, this evidence must clearly and convincingly show that Dr. Todd is disabled under the statutory definition, and that he is in need of the protection of the court. Moreover, this evidence must preponderate in favor of the trial court's finding that appointment of a conservator is in Dr. Todd's best interest and is the least restrictive alternative, and must also support the appointment of Verble, Ms. Justice, and Ms. Bean as the proper co-conservators for Dr. Todd. We find that the truncated evidence in this record does not satisfy these requirements.

Although a diagnosis of Alzheimer's disease may indicate that a person is a "disabled person," as defined in Tenn. Code Ann. §34-1-126, that fact, standing alone, does not indicate that a person is in need of the court's help. Because Dr. Todd has not had the opportunity to present his case (as discussed below), the record does not clearly and convincingly support a finding that Dr. Todd is a disabled person under the statutory definition. Moreover, even if a person is found to be disabled under the statute, the court must also find, by clear and convincing evidence, that the disabled person is in need of the court's assistance. This second inquiry is also not supported by clear and convincing evidence in the present case.

As stated above, Dr. Catanese's report does not comply with Tenn. Code Ann. § 34-3-105 and therefore, the trial court should not have considered this report. Accordingly, we did not consider this report in determining whether clear and convincing evidence existed upon which the trial court could conclude that Dr. Todd was disabled and in the need of the court's assistance.

We have reviewed Dr. Parkhurst's report, which does comply with the statutory requirements. Dr. Parkhurst opined that Dr. Todd's prognosis is one of "gradual, progressive decline;" however, Dr. Parkhurst made no findings concerning the specifics, or degree, of Dr. Todd's cognitive decline at that time, other than to opine that he was in need of supervision. Because Dr. Todd's prognosis is one of gradual decline, there is some question as to when, if ever, Dr. Todd's functioning would (or had) diminished to the point of needing a conservator. In short, Dr. Parkhurst's report does not clearly and convincingly support a finding that Dr. Todd was in immediate need of the court's intercession.

Likewise, the testimonies of Mr. Buhran and Ms. Corn do not bolster the doctor's report to such a degree as to satisfy the stringent clear and convincing standard. Ms. Corn's observation that Dr. Todd was agitated is not sufficient to prove diminished capacity. In fact, because conservatorship proceedings are often highly contested, agitation on the part of the respondent may be more the norm, than proof of infirmity. The fact that Dr. Todd was able to explain the cause of his agitation, and was able to inform Ms. Corn that he did not wish to have a conservator, would seem to indicate that his faculties were intact at that time.

Perhaps more important is the testimony of Mr. Buhran that Dr. Todd had made some plans concerning his estate. Without development of the record concerning the exact nature of the documents executed by Dr. Todd, it is impossible to determine whether he is in need of the court's assistance. The trial court has an affirmative duty to impose the least restrictive alternative upon the disabled person. Tenn. Code Ann. § 34-1-127. Although the court specifically found that the appointment of a conservator was the least restrictive alternative for Dr. Todd, without the specifics of Dr. Todd's estate planning in the record, there is no

basis upon which the court could have reached this determination. In short, Dr. Todd could have executed documents sufficient to preserve his interests, which documents would have negated the need for a conservator. However, without these documents or at least testimony concerning the nature of the documents, that determination cannot be made.

Our conclusion that, in the absence of clear and convincing evidence that Dr. Todd was presently in need of a conservator, Ms. Justice failed to meet her burden of proof to establish the need for court intervention, mandates a remand of this matter for further hearing. Based on this conclusion, all other issues are pretermitted.

For the foregoing reasons, we vacate the order of the trial court, and remand for such further proceedings as may be necessary and consistent with this opinion. Costs of this appeal are assessed to the Appellee Tonya Todd Justice, for which execution may enter if necessary.

<br>

_____
J. STEVEN STAFFORD, JUDGE